34 N.J. Super. 1 (1955)
111 A.2d 293
JOHN GRENEWICZ, PETITIONER,
v.
CHESTER K. LIGHAM, DIRECTOR OF THE OFFICE OF RENT CONTROL, DEPARTMENT OF CONSERVATION AND ECONOMIC DEVELOPMENT OF THE STATE OF NEW JERSEY, ET AL., RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 13, 1954.
Decided January 6, 1955.
*4 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Mortimer Neuman argued the cause for the petitioner.
*5 Mr. Harold Kolovsky, Assistant Attorney-General, argued the cause for respondent Director of the Office of Rent Control (Mr. Grover C. Richman, Jr., Attorney-General; Mr. Chester K. Ligham, Deputy Attorney-General; Mr. Benjamin G. Van Tine, of counsel for respondent Director).
Mr. George F. Losche argued the cause for the respondent Rilost Realty Co., Inc. (Mr. Joseph Feinman, attorney).
The opinion of the court was delivered by FRANCIS, J.A.D.
Plaintiff seeks a declaratory judgment under R.R. 4:88-10 as to the validity of certain regulations of the Director of the Office of Rent Control which were promulgated under the State Rent Control Act of 1953, L. 1953, c. 216; N.J.S. 2A:42-14 et seq. The particular regulations attacked were filed with the Secretary of State on July 30, 1953; amendments thereto were registered in the same office on April 23, 1954, during the pendency of this proceeding. Both original and amended regulations will be considered.
At the outset of our consideration of the matter, attention is called to the question of the timeliness of the filing of the "petition" for declaratory judgment, the date being more than four months after the effective date of the original regulations. See R.R. 4:88-1 (defining proceeding in lieu of prerogative writ); 4:88-15. However, since it was not raised by the parties we shall pass it in order to determine the substantive merits of the case.
Prior to July 16, 1947, Rilost Realty Co., Inc. was the owner of premises known as 819-825 22nd Street, Union City, N.J. For several years the building thereon was vacant and unfit for habitation. On the date referred to a contract was executed under the New Jersey Veterans' Emergency Housing Act (N.J.S.A. 55:14G-1 et seq.) between the Administrator of Public Housing and Development Authority and Rilost for the rehabilitation and conversion of the building in order to create additional housing space for veterans. Under the contract also, the premises *6 were leased to the Administrator for a period of five years (the duration of the emergency asserted by the Act, N.J.S.A. 55:14G-12) to begin on the date of the first tenant occupancy after the completion of the conversion.
The remodeling, which resulted in the creation of 26 self-contained family dwelling units, was finished in April 1948 and the term of the lease began on April 28 of that year.
The original cost of the conversion was $85,412.07, which was paid by the State under the Emergency Housing Act. The lease provided for the recapture of 50% of this sum out of the income derived from the premises. The rents to be paid by the tenants were in the control of and to be fixed by the Administrator throughout the period. N.J.S.A. 55:14G-12, subds. b, c. Apparently the rents for the dwelling units were established by him prior to the inception date of the lease and a computation of the net amount to be produced thereby over the five-year period showed that the full 50% of the State's investment would not be recovered. Accordingly, by a supplemental agreement Rilost agreed to pay approximately $2,000 to make up the difference.
It was further provided in the agreement that in consideration of the recapture of 50% of the cost, the premises would be surrendered to the owner with all the improvements thereon at the end of the term. Pursuant thereto, on April 29, 1953, the Administrator made the return to the Realty Company.
The Federal Housing and Rent Act of 1947 as amended (50 U.S.C.A. App. § 1881, et seq.) expired on July 31, 1953. In anticipation thereof, our Legislature adopted the present State Rent Control Act, effective July 7, 1953, to be operative until December 31, 1954. L. 1953, c. 216; N.J.S. 2A:42-14 et seq.
Under this act a State Rent Control Office was created, headed by a Director, and he was given authority to promulgate rules and regulations "to effectuate the purposes" thereof with respect to rent control. N.J.S. 2A:42-15, 20. Section 9 (N.J.S. 2A:42-22) further provides that:
*7 "The rules and regulations to be made and promulgated * * * may contain such classifications and differentiations and may provide for such adjustments or reasonable exceptions, according to the use or character of an area or of property, or both, as in the judgment of said director are necessary or proper in order to effectuate the purposes of this act. * * *"
On July 30, 1953 the Director issued the following regulation which is under attack in this proceeding:

"Part I, Article III, Section 2.
2. Pursuant to the provisions of the Act, particularly section 9 thereof, the following additional housing space shall be totally excepted from the operation of the act and the regulations:
(a) Particular housing space in controlled areas under the Act and these regulations which has heretofore been decontrolled under the Federal Housing and Rent Act of 1947, as amended, even though such housing space may have been recontrolled by reason of having been situated in a critical area under Federal Law; * * *
(c) Housing space constructed, converted, operated, managed and maintained under the Veterans' Emergency Housing Act of the State of New Jersey (c. 323, P.L. 1946, as amended and supplemented); * * *."
Thereafter the tenants of the premises in question were notified by the Realty Co. that as of September 1, 1953 their monthly rent would be increased from $47 to $60. Presently the tenants are paying the increase which is being held in escrow pending the outcome of this action by Grenewicz, one of their number.
Grenewicz claims that the increase is unlawful because the housing space is subject to the State Rent Control Act which, upon its adoption, automatically established as the base rental the amount being paid as of July 31, 1953. § 19; N.J.S. 2A:42-32. Since the rent as of that time was $47 monthly, he urges there was no right to change it upward, unless it was done by an authorized rent control agency under §§ 16, 17 and 18; N.J.S. 2A:42-29, 30, 31.
Realty Co., Inc. answers that its housing space is excepted from rent control under the act by virtue of the regulations set forth above.
The Federal Housing and Rent Act of 1947, supra, excluded from control "additional housing accommodations *8 created by conversion on or after February 1, 1947 * * *." 50 U.S.C.A. App., § 1892(c)(3)(A). The purpose of this exclusion was to encourage the creation of a greater number of dwelling units available for rental and thus lessen the economic pressure which brought about the need for the restrictions. Bancroft Realty Co. v. Alencewicz, 7 N.J. Super. 105, 107 (App. Div. 1950).
It is obvious that the housing space here qualified for decontrol or exclusion under the quoted section of federal law. And no suggestion is made that the Federal Housing Expediter ever took any action with respect to the establishment of a rent ceiling therefor at any time subsequent to the completion of the remodeling work. Consequently, the premises are not subject to the State Rent Control Act by virtue of section 2(a) of article III of the Director's regulations unless the exception is invalid.
The tenant argues that it is an ultra vires act of the Director because: (a) section 9 of our statute specifically enumerates the exceptions to be allowed, and (b) if the specific enumeration does not represent the limits of the authority, then section 2(a) is not a "reasonable exception" within the legislative intendment.
The specific listing of the exceptions referred to appears in the second sentence of section 9 immediately following the bestowal of the authority, outlined above, to provide for reasonable exceptions. There it is provided that the regulations prescribed shall except certain types of housing space, namely, that rented or leased for seasonal use, or situated on a farm and occupied by a tenant farmer, or space providing living quarters for domestic servants, caretakers, janitors, managers, or other employees as all or part of their compensation for work done in connection with the premises of which the space is a part, and luxury housing space for which there is no shortage. Manifestly, these legislative specifications are simply a mandate to the Director that such space shall be excluded from control under his regulations; they do not confine his authority. Nor do they demonstrate, as seems *9 to be claimed, that the legislative intent was to permit the Director to make reasonable exceptions only with relation to procedures and methods of accomplishing control and administering the control of housing space which is subject to the Act. On the contrary, the context of the entire section 9 exhibits an aim to permit an overall exercise of discretion in the Director in the field of exceptions both as to procedure and housing accommodations.
The second basis for the challenge, i.e., that the exemption of these premises from control on account of their conversion after February 1, 1947 is not a reasonable exception, in our judgment stands on no firmer footing.
The guides laid down by the Legislature for the exercise of the Director's discretion in establishing exceptions are that they shall be "reasonable" and "necessary or proper" in his judgment "to effectuate the purposes" of the act. That these are adequate and lawful standards has been declared judicially. Jamouneau v. Harner, 16 N.J. 500 (1954).
Thus we come to the basic question of whether the regulations attacked represent a reasonable exercise of the authority conferred within the boundaries of these standards.
In passing upon the validity of these substantive administrative rules, the judicial function is to determine whether the Legislature has been obeyed. 73 C.J.S., Public Administrative Bodies and Procedure, § 104, p. 424. The presumption is in favor of conformity (Visco v. City of Plainfield, 136 N.J.L. 659, 663 (Sup. Ct. 1948)), and a regulation will not be set aside unless it is plainly and palpably inconsistent with the statute. 73 C.J.S., supra, p. 424. So long as it fulfills the general legislative purpose and does not constitute a substantive addition thereto its propriety is unassailable. United States v. Antikamnia Chemical Co., 231 U.S. 654, 667, 34 S.Ct. 222, 58 L.Ed. 419 (1914).
It is true that the federal act contained an express exclusion in housing conversion cases such as the present one, while the state act does not. This of itself does not mean that the Director has added substantively to the statute. *10 We believe that just as the history of the times may be considered in construing a statute, Newark v. Board of Equalization of Taxes, 80 N.J.L. 258 (Sup. Ct. 1910), affirmed 81 N.J.L. 416 (E. & A. 1911), such history, and particularly any pertinent federal or state legislation, may be looked to in adjudging the validity of an administrative regulation.
The preamble of our act demonstrates beyond doubt that the Legislature was acutely conscious of the approaching demise of rent control on a national scale, and further that the emergent economic conditions which were the producing cause of that control had not abated in New Jersey. So, although the precise language of the federal law was not incorporated, the numerous references thereto give rise to the conclusion that a general pattern akin thereto was intended. The legislative awareness of that law signifies knowledge that certain exceptions had been made in the Congressional plan of control. So some types of property which obviously should not be subject to rent control were excluded and other "reasonable exceptions, according to the * * * character of * * * property * * * necessary or proper in order to effectuate the purposes" of the act were left to the judgment of the Director. § 9; N.J.S. 2A:42-22.
We may assume that the Director was conscious that property converted after February 1, 1947 in order to obtain additional housing accommodations was exempt from the Federal Housing and Rent Act and that the purpose was to encourage the increase of housing space. And here it may be noted also that Congress said nothing which prevented the exclusion of such property where the conversion was obtained at the expense of a state. (50 U.S.C.A. App., § 1892(c)(3)(A)).
Consequently, since this property was free from interference by the Federal Housing Expediter, the rents could have been fixed at the will of the owner were it not for the *11 cession of the power to do so in the lease to the New Jersey Administrator. But by the lease that control was yielded and the owner received no income therefrom for the ensuing five years. And when the premises were returned, they became subject to taxes at the increased valuation brought about by the improvements made by the state.
It has been pointed out that even though the owner was deprived of rents and management during the five years, the returned property had been enhanced in value through the $85,000 expenditure for improvements. It cannot be denied that subject to some depreciation and perhaps some obsolescence, the market value thereof is greater now than prior to July 1947. On the other hand, it cannot be overlooked that the rents were kept at a modest scale by the Administrator in the interest of the war veterans and that all of the net rents and some additional cost furnished by the Realty Co. were turned over to the State so that one-half of the $85,000 would be repaid.
All of the factors outlined, namely, the freedom from control of property of this character under the federal system because of the willingness of the owner to devote it to the emergent public need, the fact of control of such converted property under the state Veterans' Emergency Housing Act during the five-year period of the lease, the obvious increase in taxes, and perhaps other maintenance costs to which such an owner would be subjected upon the return of the property to him, undoubtedly contributed to the formation of the Director's judgment that such premises should be excepted from control now. The wisdom or unwisdom of the regulation resulting from that determination is not for us to decide. The question for our attention is whether he can issue it, that is, whether it is reasonably within the legislative delegation of power to him. Our opinion is that the regulation is well within the authority to make reasonable exceptions according to the character of the property, and that it tends to effectuate the purposes of the act. We further conclude that no illegal discrimination or other invalidity *12 arises from its application to the factual situation presented here.
In view of the conclusion thus reached as to the validity of section 2(a) it is not necessary to discuss 2(c) or the 1954 amendments to Part I, Article III, of which these subsections are a part. However, since they have been presented in the briefs a useful purpose may be served by giving some consideration to them.
Section 2 which has been under discussion was amended, as already indicated, on April 23, 1954. Subsection (d) now excepts:
"(d) Additional housing space created by conversion involving structural changes in particular housing space by substantial alteration and remodeling
(1) during the period between February 1, 1947 and March 31, 1949; * * *."
This amendment now relates to the premises in question and clearly excludes the space from rent control. For the reasons stated it, too, must be considered valid.
It will be observed that section 2(c) as promulgated originally excepted "housing space constructed, converted, operated, managed and maintained" under the Veterans' Housing Emergency Act. Since "maintained" was in the conjunctive, plainly the section related to housing space which had been converted and was being maintained currently under the Emergency Act.
The period of emergency under section 12, supra, of the act was declared to be for five years from the date the space in converted houses was ready for occupancy, and it could be continued for an additional two years in any municipality through appropriate action by its governing body. So when section 2(c) was adopted, some such properties may still have been in the hands of the Administrator and thus provided for.
Since the housing space in question had been returned to the Realty Co. by the Administrator, it was no longer being "maintained" by him. Therefore it cannot be considered as *13 within the scope of the regulation. However, this regulation has been amended also and it now appears to be section 2(e), which eliminates from rent control:
"Housing space constructed or converted under the Veterans' Emergency Housing Act * * *."
Excision of "and maintained" clearly alters the effect of the original regulation so that as of April 23, 1954 the premises would be covered by this regulation as well as the original and amended ones with which we have already dealt.
For the reasons stated, the disputed regulations are declared valid and validly applied in the factual setting here, and the housing space of the Realty Co., Inc., is excepted thereby from rent control under the State Rent Control Act of 1953.