STATE OF NEW JERSEY, BY THE STATE HIGHWAY COMMISSIONER, PLAINTIFF-RESPONDENT, v. BOARD OF CHOSEN FREEHOLDERS OF BERGEN COUNTY, DEFENDANT-APPELLANT, AND CITY OF HACKENSACK, DEFENDANT-RESPONDENT.

Argued June 4, 1962—Decided June 29, 1962.

34

*Mr. Milton T. Lasher,* Bergen County Counsel, argued the cause for the defendant-appellant.

*Mr. Theodore I. Botter,* Assistant Attorney General, argued the cause for the plaintiff-respondent (*Mr. Arthur J. Sills,* Attorney General, attorney; *Mr. William J. McCormack,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

JACOBS, J.   The defendant Board of Chosen Freeholders of Bergen County appealed from a judgment entered in the Chancery Division in favor of the plaintiff State of New Jersey.   We certified the appeal while it was pending in the Appellate Division.   See *R. R.* 1:10–1(*a*).

Pursuant to lawful authority, the State Highway Department undertook the construction of Route 80, Section 5 as part of the Federal Interstate and Defense Highway System.

See *N. J. S. A.* 27:7A–1 *et seq.* A public hearing in connection with the alignment of the Route was held on March 24, 1958 in the City of Hackensack, certain officials of the County of Bergen were notified on October 23, 1958 and prior thereto that Polifly Road, a county road which would be intersected by Route 80, would be lowered from 8 to 10 feet, and a construction contract was entered into on July 18, 1961 between the State by its Highway Department and the Franklin Contracting Company. The contract provided that during the construction work on Polifly Road, the contractor could close the road to through traffic and reroute it *via* Summit Avenue and Mary Street, municipal roads maintained by the City of Hackensack.

In due course the contractor began operations and detoured Polifly Road traffic in accordance with its contract with the State. At this point the local police officials interfered and threatened to arrest the representatives of the Highway Department and the Contracting Company if they barricaded Polifly Road and diverted traffic over the detour roads. On August 30, 1961 the Executive Administrator of the Board of Freeholders addressed a letter to the State Highway Commissioner in which he suggested that a conference be held on September 6, 1961. On that date a conference was held and was attended by representatives of the Highway Department, the Board of Freeholders and the Contracting Company. The Board took the position that the Department was required to obtain its approval (which the Board refused to give) before the Department could proceed with the changes in Polifly Road or with the closing of that road and the detouring of traffic. The Department took the position that it was not required to obtain such approval and that the Contracting Company could proceed notwithstanding the Board's refusal to approve.

On September 7, 1961 the State, by the State Highway Commissioner, filed its complaint in the Chancery Division seeking an injunction against interference with

the construction work on Polifly Road, the closing of that road and the detouring of traffic. Upon the filing of the complaint, Judge Leyden issued an order to show cause embodying an *ad interim* restraint. Thereafter the Board of Freeholders served notice that it would move to dissolve the restraint and the matter was argued before Judge Grimshaw on September 11, 1961. A stipulation of facts was entered into and the parties agreed that the determination on the argument would be deemed to constitute a final judgment. On September 27, 1961 Judge Grimshaw concluded that the restraint should be continued and described the controversy as "an unseemly squabble" resulting largely from insufficient consultation between the Highway Department and the local officials. The formal judgment entered by him on November 10, 1961 restrained the defendants from interfering with the barricading of Polifly Road and the detouring of traffic by the State and its contractor and granted leave to the Board of Freeholders to apply for dissolution of the restraint in the event the contractor failed to comply strictly with the provisions in its contract relating to the maintenance and protection of traffic in the area covered by the restraint. On January 3, 1962 the construction was substantially completed and Polifly Road was reopened; the State has not sought dismissal for mootness and in view of the public nature of the controverted issue and its likely recurrence we shall now determine it. See *State v. Perricone,* 37 *N. J.* 463 (1962); *Dyer v. Securities and Exchange Commission,* 266 *F. 2d* 33, 47 (8 *Cir.* 1959), *cert.* denied 361 *U. S.* 835, 80 *S. Ct.* 86, 4 *L. Ed. 2d* 75 (1959).

In support of its appeal, the Board of Freeholders rests on the position which it has maintained throughout the controversy, namely, that the State Highway Department had no right to close Polifly Road and detour traffic during the period of construction without first obtaining the Board's consent. The Board does not charge that the Department's determination to close the road and detour traffic was un-

necessary and represented an arbitrary or capricious exercise of administrative power; such charge, if made, would have been reviewable in timely proceedings by the Board under *R. R.* 4:88–8. See *Town of Bloomfield v. N. J. Highway Authority,* 18 *N. J.* 237, 238 (1955). Nor does the Board charge any lack of constitutional power in the Legislature to authorize the Highway Department to proceed without first obtaining county or municipal consent; admittedly the legislative power over its political subdivisions is sufficiently broad to enable such course of action. See *Becker v. Adams,* 37 *N. J.* 337, 340 (1962); *Jersey City v. Martin,* 126 *N. J. L.* 353, 361 (*E. & A.* 1941). The specific contention submitted by the Board to us for determination is that there is no legislative provision authorizing the State Highway Commissioner to close a county road and detour traffic over designated municipal roads during the course of the construction of a State highway without first obtaining the county's consent and that if he acts without such consent he does so illegally. This contention entails reference to the pertinent statutory provisions including *R. S.* 27:7–21, *R. S.* 27:3–1 to 3 inclusive and *R. S.* 27:7–3 to 6 inclusive.

*R. S.* 27:7–21 provides that the State Highway Commissioner may adopt rules and regulations and enter into contracts covering all matters and things incident to the construction of State highways and may "do whatever may be necessary or desirable" to effectuate the purposes of the statute. *R. S.* 27:3–1 provides that when a road is being constructed or reconstructed or is undergoing extraordinary repairs and is accordingly closed or rendered unfit for public travel, the State Highway Commissioner, when the work is being done by his Department, may provide detours "over any other roads in the state." *R. S.* 27:3–2 provides that the State Highway Commissioner may expend money "on roads used as detours" so as to place them in fit condition for public travel, provided he first obtains from the body having control over the detour roads "consent to make

repairs." *R. S.* 27:3–3 provides that when the State is engaged in work requiring detours, the State Highway Commissioner shall make the necessary factual determinations as to the necessity for the detours, the names of the roads to be used, and the amount of money required "to put the detours in proper condition for travel." *R. S.* 27:7–3 to 6 inclusive provide that in laying out State routes the State Highway Commissioner may, after notice and hearing, incorporate roads under county and municipal control into the State Highway System.

It is important to note that nowhere in any of the aforecited enactments is there any provision for local consent except in *R. S.* 27:3–2 which relates to the expenditure of money for the repair of detour roads. We are not concerned with such expenditure or repair for the Board does not urge here that the Commissioner illegally expended money for the repair of the detour roads of Summit Avenue and Mary Street without local consent. It may well be that the Legislature included its provision for local consent in *R. S.* 27:3–2 in order to avoid permanent changes in transient detour roads which might not be consonant with local interests and desires. In any event there is no basis for implying that, despite the omission of any express requirement in *R. S.* 27:7–21, *R. S.* 27:3–1 and *R. S.* 27:3–3, the Legislature intended to impose county consent as a condition precedent as to the temporary closing of a county road being depressed, as here, for intersection by the State highway route. The declaration of such a condition precedent would, without reason, reject the breadth of the pertinent statutory terms and would seriously impair the State's conscientious endeavors to establish and maintain modern highway routes. *Cf. R. S.* 27:7–3 to 6 inclusive. See *Roman Catholic Diocese of Newark v. McGovern,* 6 *N. J. Misc.* 572, 574, 142 *A.* 349 (*Sup. Ct.* 1928); *cf. City of Newark v. N. J. Turnpike Authority,* 7 *N. J.* 377, 387 (1951), appeal dismissed 342 *U. S.* 874, 72 *S. Ct.* 168, 96 *L. Ed.* 657 (1951); *Town of Bloomfield v. N. J. High-*

*way Authority, supra,* 18 *N. J.,* at *p.* 244; *In re Public Service Electric and Gas Co.,* 35 *N. J.* 358, 373 (1961); *Mayor, etc., Elizabeth v. N. J. Turnpike Authority,* 7 *N. J. Super.* 540, 545 (*Ch. Div.* 1950); *N. J. Inter. Bridge and Tun. Com. v. Jersey City,* 93 *N. J. Eq.* 550, 553 (*Ch.* 1922).

The Board refers to *N. J. S. A.* 27:16–31 which states that it may adopt regulations for the protection of roads under its control, and to *R. S.* 27:16–38 which allows an action for damages by the owner of real estate situated along a road controlled by the Board, "the grade of which shall have been altered." This clearly refers to alteration by the Board of the grade of a road under its control and not to a situation where, as here, the grade of the county road is altered by the State Highway Department during its temporary control. It may be noted that the State Highway Commissioner has formally represented to us that his Department has "negotiated with and is negotiating with the property owners affected, and is paying and will pay for their damage by agreement, if possible, and, if not, by having the damages assessed in eminent domain proceedings."

We are satisfied that the State Highway Commissioner had adequate statutory power to proceed as he did in the closing of Polifly Road and the detouring of traffic without first obtaining the county's consent and find nothing in the record before us to indicate any arbitrary or capricious exercise of that power; accordingly, the judgment of the Chancery Division is in all respects:

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For reversal*—None.