75 N.J. Super. 455 (1962)
183 A.2d 454
ESSO STANDARD OIL COMPANY, ET AL., PLAINTIFFS,
v.
CARL HOLDERMAN, COMMISSIONER, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, DEFENDANT.
NEW JERSEY MANUFACTURERS CASUALTY INSURANCE COMPANY, ET AL., PLAINTIFFS,
v.
CARL HOLDERMAN, COMMISSIONER, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, DEFENDANT.
NEW JERSEY MANUFACTURERS CASUALTY INSURANCE COMPANY, ET AL., PLAINTIFFS,
v.
RAYMOND F. MALE, COMMISSIONER, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued January 29, 1962.
Decided July 12, 1962.
*459 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Edward B. Meredith argued the cause for plaintiffs New Jersey Manufacturers Casualty Insurance Company and Mitchell-Bissell Company.
*460 Mr. John W. Fritz argued the cause for the plaintiffs self-insurers (Messrs. Wharton, Stewart & Davis, attorneys).
Mr. Theodore I. Botter, Assistant Attorney General, argued the cause for defendants (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney; Mr. Elias Abelson, Deputy Attorney General, on the brief).
The opinion of the court was delivered by CONFORD, S.J.A.D.
These are consolidated declaratory judgment proceedings brought in this court pursuant to R.R. 4:88-10 attacking the validity and reasonableness of certain orders of the late Commissioner of Labor and Industry, Carl Holderman, revising the requirements for the reporting of industrial accidents and compensable occupational diseases. Plaintiffs sue as representatives of affected insurance companies carrying workmen's compensation liability coverage, insured employers and self-insured employers. This court heretofore settled the procedure for the making of the record herein in New Jersey Mfrs. Cas. Ins. Co. v. Holderman, 54 N.J. Super. 260 (App. Div. 1959), wherein a fuller description of the background of this action will be found. Subsequently, Commissioner Holderman died, and Commissioner Raymond F. Male assumed office as his successor. He conducted the hearings ordered by this court at various times between December 15, 1959 and February 26, 1960, in the course of which there was amassed a record of testimony and exhibits which, together with the findings and other pleadings in this matter, comprises a printed record of almost 3,000 pages. At the conclusion of the hearings the Commissioner filed his "Findings of Fact and Conclusions," wherein he determined that the prescribed forms and regulations were reasonable and necessary for the conduct of several agencies in the Department, but ordered certain modifications to accord with what he *461 found to be constructive suggestions and views by both sides during the hearings.
The processing of this litigation and its submission to the court were unfortunately delayed not only by the circumstance of the transition of official responsibility in the office of the respondent, but also by illnesses and substitutions of counsel on one side or the other and negotiations for settlement of the dispute which it was represented to the court during the proceedings promised a fair prospect of success. While it appears that substantial concessions were made by the respondent to meet the objections of plaintiffs, the latter remain basically dissatisfied, as indicated at argument, in two substantial respects: (1) the requirement for submission of medical information and diagnoses to the Division of Workmen's Compensation and to injured employees; and (2) the requirement, as to self-insured employers, for early initial reporting of accidents, i.e., at the same time as insured employers, in place of the requirement in R.S. 34:15-97, which calls for reporting immediately upon knowledge of an accident (or compensable occupational disease) causing disability extending beyond the seven-day waiting period or any permanent injury.
The final adoption by Commissioner Holderman of the revised forms of accident reporting on October 1, 1958 was preceded by a long period of study and analysis within the Department of Labor and Industry, as well as of consultation and exchange of viewpoints with representatives of employers and insurance carriers, beginning early in 1956, when the Commissioner enlisted the advice of Dr. Monroe Berkowitz, a member of the faculty of the Department of Economics of Rutgers University, relative to improvement of administrative procedures in various divisions and bureaus of the Department of Labor and Industry, particularly as to the processing of workmen's compensation claims. Dr. Berkowitz made three reports to the Department on the subject, the last on July 12, 1956. He found many of the *462 procedures antiquated, inefficient and functionally obsolete, particularly in respect of record keeping, filing and cross-referral, both in the Division of Workmen's Compensation and in other agencies in the Department concerned with matters of worker welfare, safety and accident statistics. He made specific recommendations, including the basic substance of the accident report forms now in controversy. In part, however, these were designed to reduce or eliminate unnecessary or duplicative reporting of accidents or of information relating thereto by employers and insurers.
The recommendations were studied by administrative officials in the Department with a view toward regulatory implementation, consultants including key personnel in the Division of Workmen's Compensation and representatives of agencies having responsibility for safety and industrial accident prevention, rehabilitation of injured workers, accident statistics, and supervision of laws concerning the welfare of female and minor workers. There was a consensus that earlier reporting by self-insured employers, reorganization of the information on the forms, and the expanded medical information required would subserve better administration of statutory objectives, particularly in the Division of Workmen's Compensation and the Bureau of Engineering and Safety. See infra. While no formal or public hearings were conducted by Commissioner Holderman relative to the adoption of the proposed new accident reporting requirements, it is indubitable that all representative industry, employer and insurance groups or associations were consulted in advance of promulgation, their views solicited, and some of their suggestions reflected in the content of the forms finally adopted by him.
In view of the substantial narrowing of the dispute herein at argument to the two basic new requirements of the revised report forms, as noted above, we find it unnecessary to catalogue in detail the various types of reports required before and after the directive under review. Previously, *463 the reports required substantially accorded with the specifications of R.S. 34:15-96 to 102, inclusive (sometimes referred to as the Accident Reporting Act). It will be helpful here to set forth the full text of this statute (for ease of identification we supply the revisers' headings):

"34:15-96. Reports of accident

Every employer carrying insurance as required by article 5 of this chapter (§ 34:15-70 et seq.) shall make report in accordance with the terms of his insurance policy upon the happening of any accident or the occurrence of any compensable occupational disease in his establishment. Such report shall be prepared in triplicate upon a form, designated as `first notice of accident', to be furnished by the insurance carrier. One copy shall be sent to the department of labor, one copy to the insurance carrier, and one copy shall be kept on file by the employer. A supplemental report shall be prepared on a form designated as `supplemental report', and sent in like manner, at the expiration of the waiting period prescribed by section 34:15-14 of this title. If, however, the employee is able to resume work before the expiration of the waiting period, the supplemental report shall be sent immediately upon his return. Thereafter the employer shall promptly furnish the carrier the information demanded and necessary to enable it to carry out the intent of this chapter. These reports on the first notice and supplemental forms, filed with the state, must be signed by the employer and mailed by him directly to the workmen's compensation bureau, as a check on the operations of the insurance company."

"34:15-97. Report by employer not carrying insurance

An employer not carrying compensation insurance shall make report of any accident or compensable occupational disease causing a disability extending beyond the waiting period or causing any permanent injury. The report shall be prepared and sent immediately upon the employer's having knowledge of the disability or injury named above, and shall be made out in duplicate upon forms to be secured from the workmen's compensation bureau. One copy shall be mailed to the bureau and one copy kept on file by the employer. Within three weeks after the accident, or the obtaining of knowledge of compensable occupational disease, the employer operating under article 2 of this chapter (§ 34:15-7 et seq.), shall send to the bureau a second report, containing a statement of wages and an agreement to care for the case according to the terms of the compensation law. This form shall be signed by the employee as provided thereon and by the employer. Immediately upon the employee's recovering so as to be able to resume work, the employer *464 shall file with the bureau a final report, setting forth the length of disability, the nature and extent of permanent injury, if any, and the compensation payable for each. This form shall also be signed by the employer and the employee."

"34:15-98. Report by insurance carrier

Every insurance carrier writing workmen's compensation insurance in this state shall make report of accident, or compensable occupational disease, as follows: Immediately upon receiving knowledge of an accident to an employee, or the contracting of a compensable occupational disease, causing a disability extending beyond the waiting period or causing any permanent injury, the company insuring the employer of such employee, shall at once make report to the workmen's compensation bureau on a form prescribed by the bureau. Within three weeks after the carrier has learned of the accident or the contraction of such disease, such carrier shall send to the bureau a second report containing a statement of wages and an agreement to care for the case according to the terms of the compensation law. This report shall be signed by the employee as provided thereon and by the employer or insurance carrier. Immediately upon the carrier's learning that the employee has recovered so as to be able to resume work, the carrier shall prepare a final report, and take the steps necessary to have it signed by the employee, as provided thereon. This form shall also be signed by the employer or carrier and sent to the bureau as promptly as possible. When an employee refuses to sign any of the required forms, that fact shall be noted on the blank at the point where the signature should be placed, and the forms filed with the bureau. These forms shall be fully prepared before presentation to the employee for his signature. It shall be unlawful to request or direct any injured employee to sign blank forms to be later filled out and filed with the bureau."

"34:15-99. Report not public

The first reports of accidents filed with the workmen's compensation bureau, shall not be made public, and shall not be open to inspection unless, in the opinion of the commissioner of labor, some public interest shall so require, and such reports shall not be used as evidence against any employer in any suit or action at law brought by an employee for the recovery of damages."

"34:15-100. Medical reports

As a part of the necessary medical service required by the compensation law, the employer or insurance carrier shall, when directed so to do, file with the workmen's compensation bureau copies of such medical certificates or reports as it may have on file."

*465 "34:15-101. Penalty for noncompliance

Every employer, insurer or other person failing to comply with the terms of this article shall, for each offense, be liable to a penalty of not less than ten nor more than fifty dollars, the amount thereof to be determined by and paid to the commissioner of labor. Upon refusal to pay such fine, the same shall be recovered in an action at law by the commissioner of labor in the name of the state of New Jersey."

"34:15-102. Rules and regulations; agreements filed

The workmen's compensation bureau is authorized to make such rules and regulations as may be necessary to carry out the purpose of this article and the bureau is hereby directed to keep on file the agreements filed with it for a period of eight years. Any agreement, however, covering a period greater than eight years shall be kept on file for the full term of the agreement."

I.
We address our attention first to the objections by the self-insurers to the reports required to be made by them under the order complained of. Preliminarily, we note that between 13% and 15% of all workers in the State are employed by self-insured employers. Essentially, the objection is to the earliness of the initial report, designated by the revised order as form L & I-1, required of both insured and self-insured employers. This must be filed with the Bureau of Engineering and Safety no later than the start of the second workday after injury occurs, except that in case of a fatal or serious injury (one that requires hospitalization) it must be filed immediately. It is required in all cases where the injury causes a loss of time from regular duties beyond the working day or shift on which the accident occurred, or where medical treatment beyond ordinary first aid is required (or where an occupational disease exists whether or not time is lost). Presumably the report will be made available for purposes of administration of the Workmen's Compensation Act and other agencies in the Department, although required to be first filed with the Bureau of Engineering and Safety.
*466 The contrast between the foregoing requirement and that imposed upon self-insured employers under R.S. 34:15-97 is clear insofar as degree of seriousness of an accidental injury is concerned, but not so clear in relation to time of reporting. The statutory report is to be sent "immediately" upon the employer's having knowledge of an accident causing any permanent injury or causing disability beyond the waiting period. Obviously, depending upon the employer's unilateral appraisal of the seriousness of the accident and his good faith in discharging his statutory obligation, many accidents which should be reported at once by an uninsured employer may not be. Clearly, the seven-day waiting period is not necessarily required to pass before an employer knows that because of the seriousness or nature of the injury there will be a disability lasting beyond the waiting period. Moreover, it appears from the proofs that where accidents which should be reported eventually (under the statute) are not reported at once, they may in some cases be withheld from report indefinitely or entirely, thereby promoting the likelihood that injured workers might not receive the full amount of compensation due them, whether in the form of medical treatment, or temporary or permanent disability awards.
According to the testimony of former Director of the Division of Workmen's Compensation, Ned J. Parsekian, under the heretofore reporting practice by self-insured employers precisely such abuses obtained. He testified:
"Q. Mr. Parsekian, do you know of any instances where an employee was involved in an accident, an employee of a self-insured employer was involved in an accident which caused a disability exceeding seven days, or which caused permanent injury, where an accident report form was not filed by the self-insured employer? A. Many such cases were reported to me as Director, where serious injuries were incurred by workers on the job and no report was furnished of any kind to the Division.
Reports came to me as Director from the staff that people with serious injuries, such as fractured legs or arms, wheel chair cases, *467 were brought to work by taxi or chauffeur, so that they would not register a day lost and it would not be necessary, under the rules, to report that there was a loss time injury to the Division."
Thus the administrative requirement of early reporting of all accidents of a specified objective degree of severity serves a self-policing function in assuring the filing in all compensable cases of the information specified by the statute.
There was also testimony that early reporting of the basic facts of an accident is more apt than later reporting to accurately memorialize all the pertinent information relating thereto for any of the proper purposes of the interested agencies of the Department.
Under the social philosophy underlying Workmen's Compensation legislation in this state the Division is not a mere quasi-judicial tribunal confined to the duty of deciding formally litigated claims. It is properly expected to take the initiative where necessary to assure the prompt and full provision for injured workers of all the statutory benefits to which they are entitled in a given case. In his comprehensive work, Workmen's Compensation  The New Jersey Experience (1960), Dr. Berkowitz quotes Max D. Kossoris (at p. 96) to the effect that "`the primary objective of administration [of a compensation act] is to make sure that the law is observed and that an injured worker gets everything to which the law entitles him.'" (Kossoris, "An Appraisal," in Workmen's Compensation in the United States, U.S. Dept. of Labor, Bur. of Labor Statistics, Bull. No. 1149, 1954, p. 3.) This object is the purpose of R.S. 34:15-50 which provides that settlement agreements between employers or insurance carriers and injured employees must be filed with the Division and are not binding on the parties unless approved; and that if an approved agreement has not been filed within 21 days after an injury the Division shall itself "endeavor to bring about a settlement of the pending claim." It may investigate why a *468 settlement has not been effected, and, with the consent of the worker, may itself file a petition for compensation on his behalf. Ibid.
The Division (and its predecessor Workmen's Compensation Bureau) has long maintained an active program for informal resolution of compensation claims. More recently it instituted a system for review of direct settlements which has resulted in disclosures of many substantially inadequate settlement proposals. Material increases in such settlements resulted from the exercise by the Division of its statutory authority in this regard. The information in the accident report forms is properly used and usable against the parties not only in these settlement review proceedings and in the course of informal hearings looking to settlements (providing the parties are made aware thereof) but as admissions in formal hearings of litigated claims. See Miller v. National Chair Co., 127 N.J.L. 414 (Sup. Ct. 1941) affirmed o.b. 129 N.J.L. 98 (E. & A. 1942); Amend v. Amend, 12 N.J. Super. 425 (Cty. Ct. 1950). The proofs in the case before us justify the inference that early filing of initial accident reports conduces appreciably to effectuating proper and adequate settlements and preventing approval of improper ones, considering the factors both of better assurance of availability of any reports from the employer at all (see supra) and greater likelihood of accurate and complete information when fresh in relation to the event.
Statutory authority for the regulations under review insofar as they are related to administration of the work of any agency in the Department is clear (we consider infra the contention of plaintiffs that the Accident Reporting Act is exclusive of any authority in the Commissioner to make other reporting requirements). R.S. 34:1-20 provides: "The commissioner may make and publish rules and regulations not inconsistent with law as he shall deem necessary to enforce the provisions of this title." N.J.S.A. 34:1A-3, which derives from the act reorganizing the *469 Department of Labor and Industry as now constituted (L. 1948, c. 446) provides that, "The commissioner, as head of the department, shall * * * (e) Adopt, issue and promulgate, in the name of the department, such rules and regulations as may be authorized by law; (f) Formulate and adopt rules and regulations for the efficient conduct of the work and general administration of the department, its officers and employees." Insofar as concerns the referral of the L & I-1 reports and information contained therein from the Bureau of Engineering and Safety to the Division of Workmen's Compensation or other agencies for use there, this is authorized under R.S. 34:1-9, which gives the Commissioner power to utilize one bureau in assisting the work of another.
As to agencies of the Department of Labor and Industry other than the Division of Workmen's Compensation whose functions are asserted to be aided by the more comprehensive and timely accident information afforded by form L & I-1, we find, first, considerable testimony based upon the activities of the Bureau of Engineering and Safety. This agency administers the safety codes in manufacturing, construction trades and mines, which, collectively, comprise a large segment of accident-producing industry. By virtue of reorganization of the Department under L. 1948, c. 446, and administrative action pursuant thereto, there has been delegated to the Bureau a wide jurisdiction in inspection and similar services and functions as a result of which it has a continuous interest in promotion of industrial safety. The analysis of causes of industrial accidents is a fundamental area of its administrative concern. The predecessor of form L & I-1, not previously available from self-insured employers, has been the only regular source of current notification of serious accidents available to that bureau. The head of the agency testified: "What we need are criteria that refer to correctable unsafe conditions, and the WC-1 form [same as L & I-1] report can be a clue to such a condition, *470 and it may be a clue without regard to whether or not the injury in that particular case was a serious one. When the new criteria are established, we hope to include investigations of injuries which may have been minor, but where the fact that they were minor rather than major was [an] accidental occurrence in itself. These might be classified as a `near miss accident.'" He said that in the kinds of accidents he would be interested in investigating (not necessarily correlative with the seriousness of an injury) the factory inspector should be notified the same day, and any investigation later than 10 days after the accident would not be likely to be valuable. Since at least 13% of workers are in self-insured industry, availability of timely accident information in that field was regarded as necessary for study of industrial accidents on an over-all basis.
Other testimony given on behalf of the State involved the relationship of prompt and adequately detailed accident reports to the work of the Wage and Hour Bureau, especially in relation to female and minor workers, to the Bureau of Records and Statistics, and to programs looking toward rehabilitation of injured workers. In all these respects, and perhaps others, as well as in relation to the statutory duty of the Commissioner to report annually to the Governor as to the work of his department, R.S. 34:1-19, there is established to our satisfaction a prima facie reasonable relationship between the accident reporting requirements here under attack and the proper performance by the Commissioner and the agencies under his jurisdiction of their statutory duties and obligations, so as to justify the conclusion that he had the statutory power to promulgate the requirements under R.S. 34:1-9 and N.J.S.A. 34:1A-3(e) and (f), taken in the context of all other pertinent provisions of Title 34.
Plaintiffs' major reliance for their thesis of illegality of the timing of the L & I-1 form in respect of self-insured employers, as noted, is that the Accident Reporting Act constitutes a specific regulation on the subject *471 by the Legislature, preempting the field to the exclusion of jurisdiction thereof by the Commissioner through rules and regulations. The doctrine invoked is "expressio unius est exclusio alterius." We do not, however, regard that rule of statutory construction as controlling here. At best, it is only an aid towards construction, always to be used with "great caution." Gangemi v. Berry, 25 N.J. 1, 11 (1957). The provisions in question date from L. 1924, c. 187. (Accident reporting statutes in this State go back to L. 1904, c. 64, § 28.) Whatever the extent of the actual use of the forms filed pursuant thereto by the Division (and its predecessor Workmen's Compensation Bureau), it would not appear that by adoption of this act the Legislature intended anything more than minimum requisites for assurance of at least a degree of supervision by the State of compliance by employers and insurance companies with the Workmen's Compensation Act. Section 34:15-96 tends to show this by leaving the contents of the report by insured employers to the requirements of the policy, the form to be supplied by the carrier. The supplemental report is to be supplied at the expiration of the waiting period, or immediately if the worker resumes work earlier. Copies of the reports are required sent to the workmen's compensation bureau "as a check on the operations of the insurance company."
It is not reasonable to believe that the Legislature intended, by the enactment of requirements such as these, or of the companion section dealing with self-insured employers (R.S. 34:15-97), that if in the course of its expanding and ongoing experience in administration of the act, as for example in reference to supervision of or inducing settlements pursuant to R.S. 34:15-50, the compensation bureau deemed it useful to have available fuller or earlier reports (within the limits of reasonableness) better to perform its statutory duties, the rigid, fixed specifications of the statute should stand in its way.
*472 Plaintiffs contend that Massie v. Court of Common Pleas of Monmouth, 8 N.J. Misc. 600, 1151 A. 205 (Sup. Ct. 1930), affirmed o.b. 108 N.J.L. 199 (E. & A. 1931), holds that the provisions of the Accident Reporting Act are exclusive of the regulatory jurisdiction of the Department. We do not so read the opinion. No such problem was presented. All the case held was that one of the sanctions then contained in the act for noncompliance  preclusion of plea of limitations  was enforceable against the employer when no report was filed after knowledge of injury (that sanction was subsequently repealed).
But if, perchance, a more stringent viewpoint as to the legislative intent were deemed to require us to foreclose enforced reporting to the Compensation Division by self-insured employers in any manner other than specified by the Accident Reporting Act, no such conclusion can reasonably be reached in respect of administrative requirements for reporting information as to accidents to or on behalf of other agencies of the Department, such as the Bureau of Engineering and Safety, deemed necessary for the more efficient performance of their administrative duties. Certainly the Legislature never intended its enactment of the Accident Reporting Act to have restrictive effect on the adoption by the Department of regulations pertinent to industrial safety, accident prevention, rehabilitation of injured workers, collection and promulgation of statistics for report to the Governor and Legislature, and the like. Form L & I-1 is required to be filed with the Bureau of Engineering and Safety. Once properly lodged for direct use there, no possible objection is perceivable or argued precluding concomitant use of the information contained therein for the appropriate purposes of any other agency in the Department.
In reaching the foregoing conclusions we have been guided by fairly recent pronouncements of this court in analogous circumstances. In both Grenewicz v. Ligham, 34 N.J. Super. 1 (App. Div. 1955), and Daughters of Miriam Home *473 for Aged and Infirm, Congregation Adas Israel v. Legalized Games, etc., 42 N.J. Super. 405 (App. Div. 1956), it was urged that regulations of administrative agencies were invalid because the Legislature had itself acted on the subject matter of the regulations by direct enactment; in both cases colorable arguments as to inconsistency between the respective statutes and regulations were advanced. But in both the contention was rejected. In the Grenewicz case Judge (now Mr. Justice) Francis stated: "The presumption is in favor of conformity [between legislation and regulations] * * *, and a regulation will not be set aside unless it is plainly and palpably inconsistent with the statute." (34 N.J. Super., at p. 9.) To the same effect was the opinion in the Daughters of Miriam Home case (42 N.J. Super., at p. 415), where the allegedly conflicting statute was adopted one month prior to adoption of the challenged regulation. The force of these decisions in their present application is augmented when it is considered that in those cases the attack was upon administrative regulations directly affecting substantive property rights whereas here the subject matter consists merely of procedural directives for the filing of informational reports.
Plaintiffs argue that the statutory provisions quoted above authorizing adoption of rules and regulations by the Commissioner of Labor and Industry in fairly general terms are void for lack of standards specifying the type and scope of administrative rules to be adopted. Plaintiffs cite no New Jersey case wherein procedural rules like these adopted by an administrative agency under legislative authorization to adopt such rules and regulations as are necessary for the enforcement of the act administered by the agency have been held void for lack of standards in the statute; nor cases where the statute authorized adoption of rules "for the efficient conduct of the work and general administration of the department," etc. or similar phraseology. On the other hand, a comparably couched delegation of power was sustained as adequate in Grenewicz v. Ligham, supra (34 *474 N.J. Super., at p. 9), citing Jamouneau v. Harner, 16 N.J. 500 (1954). Cf. State v. Board of Chosen Freeholders of Bergen County, 38 N.J. 33 (decided June 29, 1962).
In the ebb and flow of the delegation doctrine down the years, both state and federal cases are to be found to sustain or destroy almost any type of legislative delegation of rule-making authority to an administrative agency. But the modern and preferred approach is in favor of flexibility and liberality insofar as standards for delegation are concerned while exerting close judicial supervision over fairness of adjudicative procedures. See Gellhorn and Byse, Administrative Law, Cases and Comments (1954), p. 99, et seq. In 1 Davis, Administrative Law (1958), § 2.15, p. 150, it is stated:
"The direction of movement of the law of delegation is clear. In the federal courts, nothing but a congressional abdication or clear abuse is likely to be held an invalid delegation. One state court declared in 1956: `The modern tendency of the courts is toward greater liberality in permitting grants of discretion to administrative officials in order to facilitate the administration of the laws as the complexity of governmental and economic conditions increases.' Too many courts remain unaware of this `modern tendency.'"
And see Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944) and Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948), in the light of which, in the opinion of competent students, the famous decisions in Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935) and Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935), stressed by present plaintiffs, are apt to wither on the vine as authorities inimical to delegative flexibility. See Gellhorn and Byse, op. cit., supra, p. 114.
In Ward v. Scott, 11 N.J. 117, 123 (1952) the court said: "Nor are we restricted to the ascertainment of standards in express terms if they may be reasonably implied *475 from the entire act." As similarly expressed in Lane v. Holderman, 23 N.J. 304, 316 (1957): "the context of the act and its imbedded objectives may be considered in determining whether or not the administrator's discretion is constitutionally circumscribed." So, too, here. As an example, the provisions of the workmen's compensation act mandating conscientious protection by the Division of Workmen's Compensation of the specified rights of injured workers reasonably imply a standard and policy which may be administratively implemented by procedural regulations concerning reporting of accidents which are demonstrably servient to the more efficient execution by the agency of such statutory policy.
The peculiar significance of the factors of the continuousness of the administrative character of the agency involved and the character of the regulation as substantive or procedural was noted by the court in Van Riper v. Traffic Tel. Workers' Fed. of N.J., 2 N.J. 335, 9 A.L.R.2d 854 (1949). It was stated there was greater need of specific standards in cases of delegation of power to ad hoc labor arbitration boards than "there would be in the case of a continuous administrative body which might gather experience as it went along" (at p. 353); also, "standards of delegation are peculiarly required * * * where the legislature is enacting a new pattern of social conduct." (at p. 354.)
We find the legislative delegation of rule-making power here in accord with constitutional principle.
Plaintiffs also attack the adequacy of the final factual findings and conclusions of the Commissioner. While they could serviceably have been more detailed in some respects, we deem them adequate for present purposes. Moreover, it cannot be said that specificity of factual findings is as imperative in respect of hearings attendant upon the administrative adoption of quasi-legislative rules of general application as where the adjudicatory function of the agency is involved. See our prior opinion in this matter (54 N.J. *476 Super. 260, at p. 266). This is particularly true where the administrative product consists of procedural rather than substantive rules. In any case, the fairness of approach of the Commissioner in this matter is manifested not only by his liberality in interpretation of our prior order concerning the scope of the proofs to be admitted on behalf of plaintiffs, but also by his receptivity to a number of criticisms advanced by plaintiffs as reflected in the regulations as finally promulgated at the conclusion of the hearings.
Plaintiffs candidly admit in their brief that "their resistance to a recasting of accident reporting sprung in part from a demonstrable conviction that the forms would be used to produce more claims and to edge up the claims already made." They submit a "Brandeis" style brief, much of which is an attempted demonstration that the act is being deliberately administered for the purpose of instigating claims by satisfied employees and of producing excessive and illegal settlements and awards in favor of injured workers; that New Jersey industry cannot afford the burden of the cost of workmen's compensation as so administered; and that the forms here involved have been devised with the objective of further improper aggrandizement of the allowances to workers at the expense of industry and insurance carriers. To the extent that this represents an attack upon the bona fides of the Department in adopting these regulations, we find the assault unjustified. The other representations advanced do not belong in a brief of legal argument on the validity of the regulations. They are appropriately to be addressed to the Legislature, the Executive, or the electorate.
More pertinently, plaintiffs also argue that their proofs before the Commissioner establish that the use by the various agencies in the Department of the accident report forms in the past has been so minimal as to suggest that there is no demonstrable bona fide purpose or intent, or reasonable necessity, to use the information to be provided by the new forms for the purported purposes (accident prevention, rehabilitation, etc.). Proofs purporting to show the *477 comparative uselessness of any attempts at such uses were also adduced. In the light thereof, it is argued, the considerable additional expense and inconvenience which the revised reporting will cast upon the reporting companies impel the conclusion that the whole program is so arbitrary and unreasonably burdensome on employers and insurers as to justify judicial nullification.
We have read the proofs relative to the foregoing contentions with interest. However, we deem the argument substantially one involving policy considerations for resolution by the administrator of the agency, not by the court, in the absence of a showing of arbitrariness or unreasonableness not here demonstrated. As to the use to be made of the forms, the present Commissioner avows an intent to have greater recourse to this information in the future than has been the case under his predecessors in the past. We must accord his representations the presumption of good faith. As to the cost of compliance by plaintiffs, considering that systematic reporting of accidents has always been the practice in this State, we cannot find that the added expense of compliance with the new regulations is so excessive that, in the light of the prima facie showing of the reasonableness of the requirements and our satisfaction in all other respects with their legality, we would be warranted in holding them invalid on that ground.

II.
We turn to the second basic objection of plaintiffs to the forms  the requirements as to furnishing of medical information and diagnoses, particularly to the injured worker. As originally proposed, new form WC-5 would have required the employer or insurance carrier to report to the Division and to the injured employe detailed medical diagnoses and x-ray findings. As a result of objections by employer and insurance representatives prior to the final promulgation of the forms by Commissioner Holderman, there was a modification permitting the information *478 to be supplied the employee to be in general terms, both as to diagnoses and x-ray findings. During the hearings before Commissioner Male great stress was laid by plaintiffs' medical witnesses on the harmful psychological effect which direct receipt of raw medical information might have in many cases on injured workers. To meet this consideration, without sacrificing the aim of fair apprisal of the injured worker of the nature of his injury so that he might more intelligently decide what his claim was worth for settlement or award purposes, the regulation was modified upon final adoption after the hearings. Provision is made on the form for permitting the reporter to inform the employee that a physician of his choice may obtain medical information if the physician writes to the Division. As a prerequisite, the employer's doctor must recommend in writing that the employee not receive the data.
Concerning the continued requirement that detailed x-ray findings and detailed medical diagnoses be filed with the Division, the Commissioner found as a fact that all plaintiffs "regularly receive such information in compensable cases" and that "this information is essential for the proper exercise of rehabilitation services and the conduct of the Direct Settlement Review Program in the Division of Workmen's Compensation." We find these conclusions supported by the proofs.
The relevance between the requirement that information of the type described should go to the Division and the injured employee and the proper administration of the workmen's compensation act is obvious. As a practical matter, medical treatment of industrial injuries is in the first instance provided most often by medical and nursing personnel engaged by the employer. The statute requires that the employer render medical treatment to the employee, R.S. 34:15-15, and the economic circumstances of the injured workman generally impel his accepting treatment by the "company doctor" even after first aid of the immediate condition produced by an accident. What the presently challenged *479 rules provide is in the nature of discovery for the benefit of the worker of information generally highly material to the question of the extent of his injury and the degree of its permanence, if any, and thus to the fairness and adequacy of any award for or settlement of the claim. The information is peculiarly within the possession or control of the employer; the Division needs it in order efficiently and fairly to review or negotiate settlements; the workman (or his attorney) needs it to exercise sound judgment in relation thereto or in prosecution of a formally litigated claim.
As to the statutory authority of the Commissioner to require such information and the transmittal thereof to the employee, everything stated in I of this opinion is here also pertinent. In addition, there is the buttressing statutory provision in R.S. 34:15-100, quoted above, that the employer or insurance carrier shall, when directed so to do, file with the workmen's compensation bureau copies of such medical certificates or reports which it may have on file. We do not regard the specific requirements of the regulations under review as violative of or inconsistent with this section, within the applicable interpretive principles, favorable to administrative regulation, discussed in I, supra. Rather do we regard the express statutory provision as indicative of a general legislative attitude in accord with the object of the regulations. Here, too, the fact that the requirement is of a procedural and remedial, rather than substantive character, conduces toward liberality in sustaining it.
As in the case of the objections to the filing by self-insured employers of form L & I-1, plaintiffs strongly attack the reasonableness of the requirement for furnishing medical information. Stress is laid on the cost and inconvenience thereof to the reporting employers and insurers as well as on the unwisdom of permitting employees to have such information. Our reactions to these contentions are the same as to the similar policy and expense pleas made *480 by plaintiffs in respect of form L & I-1. We find no arbitrariness, but, on the contrary, a good deal of rational justification for this aspect of the challenged regulations. We recognize, as did the Commissioner, that there are counter-considerations, in terms of the welfare of injured workers, in permitting them to have raw medical diagnoses in certain types of ailments without the protective screen of the patient's own physician. However, this consideration does not apply to every kind of injury or ailment. Moreover, some amelioration of potential harm is provided by the last revision of the regulation. In the last analysis, however, the weighing of the policy considerations pro and contra is for the expert judgment of the administrator. We cannot say that his conclusion in this instance is arbitrary or unreasonable.
Finding all of the regulations, so far as challenged herein, to be valid and free from the legal objections leveled against them by plaintiffs, we adjudicate them to be valid, lawful and subsisting in all respects and direct that the stay against their enforcement be vacated forthwith.