IN THE MATTER OF THE ESTATE OF LUCY WEEKS,
DECEASED.

Superior Court of New Jersey
Appellate Division

Argued December 7, 1953—Decided February 5, 1954.

534

Before Judges CLAPP, GOLDMANN and EWART.

*Mr. Joseph J. DeLuccia* argued the cause for proponents-respondents (*Messrs. DeLuccia* and *A. Lawrie Young,* attorneys).

*Mr. Arthur J. O'Dea* argued the cause for contestant-appellant.

The opinion of the court was delivered by

CLAPP, S. J. A. D.     This is an appeal from probate. Contestant-appellant, testatrix' stepson, raises the three matters usually raised in such a case: undue influence, mental incapacity and improper execution of the will.

██  John Karl and his wife, testatrix' sister, are charged with exerting the undue influence.     Mental enfeeblement had brought testatrix to such a state of dependency and reliance upon them in point of mind, as to create a confidential relationship between them and her.     *In re Hopper's Estate,* 9 *N. J.* 280 (1952); *Stroming v. Stroming,* 12 *N. J. Super.* 217 (*App. Div.* 1951).     This relationship, taken with other circumstances here, raises up a presumption of undue influence.     *In re Hopper, supra.*     Chief among the circumstances rousing our suspicions is that here is a will signed four days after the Karls had been enabled, through a *habeas corpus* proceeding, to remove testatrix by ambulance to their home from a nursing home, where she had been under contestant's custody.     The will not only benefits Mrs. Karl but cuts off contestant, who was almost the sole beneficiary under testatrix' preceding will.

██  This brings us to the question, what is the minimum quantum of proof needed to rebut this presumption.     On this matter, in connection with all presumptions, there is, it is said, an "intolerable confusion."     *Model Code of Evidence, p.* 57 (1942).     However, in New Jersey it has been laid down broadly that a presumption disappears as a factor in the case "where there is an adduction of substantial evidence by way of contradiction or explanation."     *Meltzer v. Division of Tax Appeals,* 134 *N. J. L.* 510 (*Sup. Ct.* 1946); *Grand View Gardens, Inc. v. Borough of Hasbrouck Heights,* 14 *N. J. Super.* 167 (*App. Div.* 1951).     Bearing in mind that in the *Meltzer* case the court was speaking of the review of an administrative determination, we infer that by "substantial evidence" is meant such evidence, as would

"justify, if the trial were to a jury, a refusal to direct a verdict." *Universal Camera Corp. v. National Labor Relations Board*, 340 U. S. 474, 71 S. Ct. 456, 459, 95 L. Ed. 456 (1950), and cases cited; cf. *Model Code, supra, p.* 310.

Authority fully in accord with this general rule as to presumptions will be found in excerpts from the *Model Code, supra, Rule* 704 and 9 *Wigmore on Evidence* (3rd ed.), § 2491, cited at length in *Kirschbaum v. Metropolitan Life Insurance Co.*, 133 N. J. L. 5 (*E. & A.* 1945). The rule was first expounded in an "epoch-making" treatise (*Hughes v. Atlantic City, etc., R. R. Co.*, 85 N. J. L. 212, 216 (*E. & A.* 1914)), *Thayer, Preliminary Treatise on Evidence* 336 (1898). For the contrary views of Professor Morgan, see *Model Code, pp.* 57–60; 47 *Harvard L. Rev.* 59 (1933); 44 *Harvard L. Rev.* 907 (1931).

█ There are other cases in this State which seem to bear out the rule stated. They hold that where a presumption is raised as to a fact, the issue over that fact will go to the jury "only" where the evidence thereon is contradictory or reasonably subject to contradictory interpretations. *Nicosia v. Marangi*, 13 N. J. Super. 550, 554 (*App. Div.* 1951); *Coopersmith v. Kalt*, 119 N. J. L. 474 (*E. & A.* 1938); cf. *Schultz v. Hinz*, 20 N. J. Super. 346, 349, 352 (*App. Div.* 1952); *Venghis v. Nathanson*, 101 N. J. L. 110 (*E. & A.* 1925); *Tischler v. Steinholtz*, 99 N. J. L. 149, 152 (*E. & A.* 1923); *City Bank of Bayonne v. O'Mara*, 88 N. J. L. 499 (*Sup. Ct.* 1916); but see *Wallace v. A. R. Perine Co.*, 113 N. J. L. 20 (*E. & A.* 1934). When the issue does go to the jury, the presumption has by then disappeared as a factor in the proceedings; indeed a presumption is not even to be mentioned to the jury. *Dunn v. Goldman*, 111 N. J. L. 249 (*Sup. Ct.* 1933); *Kirschbaum v. Metropolitan Life Insurance Co.*, 133 N. J. L. 5 (*E. & A.* 1945), *supra*, and cases cited; but see *McCormack v. Williams*, 88 N. J. L. 170 (*E. & A.* 1915). These cases, holding that contradictory evidence on the issue must go to the jury, dovetail into the entirely settled rule that where the evidence submitted by way of rebuttal of a presumption is

uncontradicted, the court must direct a judgment on the issue contrary to the presumption. *Gaudreau v. Eclipse Pioneer, etc., Bendix Air Corp.*, 137 *N. J. L.* 666 (*E. & A.* 1948). On the other hand, if the presumption is unrebutted, the court must of course direct a verdict on the issue in accordance with the presumption.

Thus the pattern of the law emerges, delineating and laying out on all sides the general rule, already adverted to. By that rule where a presumption is raised as to a fact and then sufficient evidence is adduced so that (apart from the presumption) reasonable men might honestly differ as to whether or not that is the fact, the presumption loses all its force and, indeed, ceases to exist.

There are exceptions to this rule in the case of presumptions which, because of policy considerations, are held not rebuttable except by proof equal to or stronger than that usually required upon a civil issue. For example, see the presumptions dealt with in: *Strong v. Strong*, 136 *N. J. Eq.* 103 (*E. & A.* 1945)—proof beyond "reasonable doubt"; *Bacon v. Bacon*, 6 *N. J.* 117, 125 (1951); *Beach v. Palisade Realty and Amusement Co.*, 86 *N. J. L.* 238 (*E. & A.* 1914)—"clear and satisfactory evidence"; *Aydelotte v. Metropolitan Life Ins. Co.*, 124 *N. J. L.* 266 (*E. & A.* 1940). In all such cases, whether a preponderance of the evidence or a stronger measure of proof is required to rebut the presumption, the law, if it is to be practicable, must establish an exception to the rule that the burden of proof never shifts. *Hughes v. Atlantic City, etc., R. R. Co.*, 85 *N. J. L.* 212, 216 (*E. & A.* 1914), *supra; Kresse v. Metropolitan Life Ins. Co.*, 111 *N. J. L.* 474 (*E. & A.* 1933).

In the case of a presumption of undue influence, apparently because the presumption is fortified by policy, the proponent must, according to the language of the cases, prove, to the satisfaction of the trier of fact, that there was no undue influence. *In re Davis' Will*, 14 *N. J.* 166 (1953); *In re Hopper's Estate*, 9 *N. J.* 280 (1952), *supra; In re Fleming's Estate*, 19 *N. J. Super.* 565 (*App. Div.* 1952); *Stroming v. Stroming*, 12 *N. J. Super.* 217 (*App. Div.*

1951), *supra; Gellert v. Livingston,* 5 *N. J.* 65 (1950); *In re Nixon's Estate,* 136 *N. J. Eq.* 242 (*E. & A.* 1945); *In re Heim's Will,* 136 *N. J. Eq.* 138 (*E. & A.* 1945); *In re Bartles' Will,* 127 *N. J. Eq.* 472 (*E. & A.* 1940); *In re Smalley's Estate,* 124 *N. J. Eq.* 461 (*Prerog.* 1938), affirmed 126 *N. J. Eq.* 217 (*E. & A.* 1939); *Loveridge v. Brown,* 98 *N. J. Eq.* 381, 392 (*E. & A.* 1925); *In re Tully's Will,* 87 *N. J. Eq.* 647, 649 (*E. & A.* 1917); *In re Cooper's Will,* 75 *N. J. Eq.* 177 (*Prerog.* 1909), affirmed *Harrison v. Axtell,* 76 *N. J. Eq.* 614 (*E. & A.* 1910); *In re Anastasia Davis,* 73 *N. J. Eq.* 617 (*Prerog.* 1908); *In re Sparks' Case,* 63 *N. J. Eq.* 242 (*Prerog.* 1901); *Barkman v. Richards,* 63 *N. J. Eq.* 211 (*Prerog.* 1901); *Claffey v. Ledwith,* 56 *N. J. Eq.* 333 (*Prerog.* 1897); *Boisaubin v. Boisaubin,* 51 *N. J. Eq.* 252 (*Prerog.* 1893); *Carroll v. Hause,* 48 *N. J. Eq.* 269 (*Prerog.* 1891); *Dale v. Dale,* 38 *N. J. Eq.* 274 (*E. & A.* 1884); *Morgan, supra,* 44 *Harvard L. Rev.,* at *p.* 920, *n.* 21. In connection with this presumption, unlike other presumptions, the courts do not speak as to the burden of going forward with the evidence. However, we conclude, the moment this presumption is erected, both the burden of proof (which otherwise would have been upon the contestant, *Gellert v. Livingston,* 5 *N. J.* 65, 1950, *supra*) and the burden of going forward with proof, shift to proponent and are identical and coincident. To meet each of these assignments, the proponent must establish by the same quantum of proof—that is, by a preponderance of the proof—that there is no undue influence.

There are cases where the presumption of undue influence is so heavily weighted with policy that the courts have demanded a sterner measure of proof than that usually obtaining upon civil issues. That is the situation, for instance, where an attorney benefits by the will of his client, and especially where he draws it himself. *In re Babette Davis' Will,* 14 *N. J.* 166 (1953); *In re Hopper's Estate,* 9 *N. J.* 280 (1952), *supra; In re Heim's Will,* 136 *N. J. Eq.* 138 (*E. & A.* 1945), *supra.* However, this is not such a case. Here, it is true, the circumstances which give rise to

the presumption, are graver than those sometimes met with (it takes only "slight" circumstances in addition to a confidential relationship to raise a presumption. *Gellert v. Livingston,* 5 *N. J.* 65, 1950, *supra*). Even so, the usual standard of proof suffices—that which puts upon proponent the burden of establishing by a preponderance of the proof that there was no undue influence. In a case where the evidence raising up the presumption of undue influence weighs heavily in the balance of proofs, the evidence upon which proponent relies must, if he is to succeed, be of greater weight.

There is another matter to be borne in mind. The presumption of undue influence is of that class of presumptions by which a litigant (here the proponent) is called upon to make known facts more easily accessible to him than to his adversary. See, generally, *Morgan, supra,* 47 *Harvard L. Rev.,* at *p.* 77; *cf. Brinkman v. Urban Realty Co., Inc.,* 15 *N. J. Super.* 354 (*App. Div.* 1951). Therefore, where a presumption of undue. influence is created, the law puts upon proponent the burden of coming forward with credible "evidence satisfactorily explaining his conduct" and stating what he knows as to the making of the will. *In re Colton's Estate,* 11 *N. J. Misc.* 410 (*Prerog.* 1933), affirmed on other grounds 115 *N. J. Eq.* 327 (*E. & A.* 1934), citing, in the Prerogative Court opinion, *In re Morrisey's Will,* 91 *N. J. Eq.* 480 (*Prerog.* 1920); *Brick v. Brick,* 43 *N. J. Eq.* 167 (*Prerog.* 1887)—"a clear and natural explanation"—affirmed 44 *N. J. Eq.* 282 (*E. & A.* 1888).

So, the proponents here are called upon to establish, by a preponderance of the proof, a lack of undue influence and, further, to explain satisfactorily that which they know concerning the making of the will. With this rule in hand, we can intelligently measure against it the circumstances of the case.

In September 1947 testatrix had a cerebral hemorrhage and was taken to the hospital. Two months before, over a trivial matter, she had had a misunderstanding with Mrs. Karl, as a result of which they did not see each other in

September. While at the hospital in September testatrix made a will, giving two parcels of property to her stepson and the bulk of her estate to two sisters of hers other than Mrs. Karl, these sisters and Mrs. Karl being her sole next of kin. Two months later she was hospitalized again, and her stepson engaged attorneys who drew a will, cutting off the three sisters and giving nearly all her estate to the stepson.

Testatrix then came to live with her stepson and his wife, and from the evidence we catch a glimpse, here and there, of what went on in that household. Once the wife hit testatrix, and apparently at other times testatrix said to her, "I hope you fall and break your neck, you scullery maid." The stepson had a power of attorney over testatrix' estate, and during this period she accused him of stealing her money and other things. Although this seems to have been an unjust charge, nevertheless later when she revoked the power, it took seven months, lawyers on both sides and a waiver on her part of mortgage interest due her by him, before he turned back her assets. When he returned home after a vacation she, then in the nursing home in which he had placed her, did not want to return to his home. He himself asserted she was then "very cool" to him and his wife, and this was before the Karls had had an opportunity to exert undue influence upon her.

Contestant seems to have given orders not to let the Karls see testatrix, or not to let them see her alone. At any event, she asked Mr. Karl to secure a lawyer to get her out of the nursing home, but not to obtain a lawyer from Nyack where she was, "because they all know" contestant (he was the chief of police there), "and I don't trust them." Thus it was that Mrs. Karl instituted a *habeas corpus* proceeding to remove her from the nursing home.

Testatrix wanted the above-mentioned power of attorney revoked, and had Mr. Karl write the attorney who conducted the *habeas corpus* proceeding (theretofore a stranger to the Karls), to come to see her. He arrived at the Karls' home two or three days after she had been taken there from

the nursing home, and she then made plans to make the will propounded. However, Mr. Karl did not know of these plans until the attorney asked him to get witnesses for the will. A notary public, who at the time notarized the revocation of the power of attorney, was told by her that the people she had been staying with (apparently her stepson and his wife) were "not good to her."

By the instrument propounded, the testatrix' three sisters took nearly her entire estate in equal shares, appointing Mr. Karl executor and cutting off the stepson. This, under the circumstances, as we find them to be, was an entirely natural will. The fact that it was made so soon after testatrix had moved to the Karls' home was but a natural reaction not only to the situation existing at her stepson's home and the nursing home, but perhaps also to the somewhat questionable will, made a year before, in his favor.

Proponents have carried the burden of proof, establishing by the preponderance of the evidence that the will was not the product of undue influence, and satisfactorily explaining what they knew of the matter. Undue influence is exerted where a testator is coerced to do that which he would not have done if left to himself (*Gellert v. Livingston,* 5 *N. J.* 65 (1950), *supra*), or where there is importunity which cannot be resisted and is yielded to for the sake of peace (*Den d. Trumbull v. Gibbons,* 22 *N. J. L.* 117, 136, 158 (*Sup. Ct.* 1849)). The clarifying test of the matter, as laid out in *Wingrove v. Wingrove,* 11 *P. D.* 81 (*High Court* 1885), is whether the testator's mind, when he made the will, was such that, had he expressed it, he would have said: "This is not my wish, but I must do it."

Stress is put upon the failure of Mrs. Karl to take the stand. However, this matter was not brought to the attention of the court below, and therefore should not be considered here. *Ex-Cell-o Corp. v. Farmers Coop. Dairies Ass'n.,* 28 *N. J. Super.* 159 (*App. Div.* 1953). Besides, there is not the slightest suggestion Mrs. Karl had knowledge of anything concerning the making of the will which was

not fully brought out by her husband. Moreover, she was a lady, it is said, of advanced years; and the record gives some indication that she was present at the trial and upset by questions put to her husband by contestant's attorney toward the end of the hearings and that the court refused to grant a recess because she was upset, saying to counsel "you can probably finish" the case that afternoon. The case was closed not long after, at 4:30 in the afternoon.

Upon the second issue in the case, that of mental incapacity, there is cast upon contestant under the New Jersey rule not only the burden of proof (*In re Heim's Will*, 136 *N. J. Eq.* 138 (*E. & A.* 1945), *supra*), but also the burden of rebutting a presumption that every person is of sound mind (*Gellert v. Livingston*, 5 *N. J.* 65 (1950), *supra*). The presumption is of that class of presumptions which operates "to make more likely a finding in accord with the balance of probability." *Morgan, supra*, 47 *Harvard L. Rev.*, at *p.* 77. The rule, here, putting the burden of proof upon contestant and this presumption both work in the same direction. If, therefore, to rebut the presumption, no more than a preponderance of the proof is required, the presumption is of no consequence whatsoever in the case, except as it stands as a telling reminder that testators usually are possessed of the requisite mental capacity.

In this case we need not determine whether contestant has the burden of establishing mental incapacity merely by the preponderance of the evidence or, as one case holds (*In re Hoover's Estate*, 21 *N. J. Super.* 323 (*App. Div.* 1952)), by a heavier burden. Contestant's case on this point is so plainly insufficient as not to warrant a full discission of the matter. A woman physician, called by him, stated that she thought it was "very doubtful" whether testatrix had sufficient capacity; that testatrix—

"* * * was so changeable, and her mind—her memory was so poor. Everything seemed to be confused at times; and I don't think she was quite capable of knowing what she was doing."

Contestant lays stress not only upon this statement which indicated much doubt on the matter, but also upon the

testimony of another doctor who had attended testatrix. But all that doctor said was that he did not feel he could answer on the broad question of her mental competency. On the other hand, there was substantial testimony of a specific sort (including some from the doctor last mentioned) indicating that she was competent. Indeed 7½ months after the will was made, contestant and testatrix exchanged releases, she waiving mortgage interest he owed her; and contestant testified as to this transaction that he believed she understood it. Indeed he even testified that she (perhaps shortly after the will was made) had told her attorney "exactly what was in" her safe deposit box in contestant's custody, and "everything was there just as it was said." At the very most, contestant raised a doubt on the matter; he clearly did not carry the burden of proof.

Upon the next issue in the case—the question whether the will was duly executed—the perfect attestation clause here raises a presumption of the sort above spoken of, namely, one heavily fortified in policy. To rebut it, contestant must establish by strong and convincing evidence, or perhaps beyond all reasonable doubt, that the will was not properly executed. *In re DuBois's Estate,* 9 *N. J. Super.* 280 (*App. Div.* 1950). To state the test is to decide the issue here. Contestant relies only upon matters affecting in trivial respects the credibility of the subscribing witnesses and the attorney who attended to the execution of the will. The presumption clearly stands unrebutted.

The last issue is raised by proponents' cross-appeal as to a counsel fee allowed to contestant's attorney. We are satisfied that there was reasonable cause below for contesting the validity of the will, *R. R.* 4:55-7 (*e*), and that the allowance was warranted. Contestant's attorney had asked for a fee of $2,500 as to this estate of $45,000, and the court allowed him $750.

Affirmed with costs to proponents.