STATE of Iowa, Appellee,

v.

GUARDSMARK, INC., a Tennessee Corporation, Appellant.

No. 54360.

Supreme Court of Iowa.

Sept. 27, 1971.

Finley & Teas, Mason City, for appellant.

Richard C. Turner, Atty. Gen., and Michael J. Laughlin, Asst. Atty. Gen., for appellee.

UHLENHOPP, Justice.

The principal issue to be decided is whether under Iowa law an organization which furnishes its own guards to others but does no investigative work must have a detective license.

The Iowa Department of Public Safety issues detective licenses to applicants who qualify under statutory provisions. The Department investigates applicants, and that takes from four to six weeks. Thereafter applicants take an examination, which is given three times annually in January, May, and September. Successful applicants are then issued a license upon posting a bond and paying a license fee.

Blue Ribbon Packing Company, which operates a packing plant at Mason City, Iowa, was engaged in a labor dispute. A strike was in progress. Blue Ribbon desired to obtain guards to protect persons and property.

Defendant Guardsmark, Inc., is a Tennessee corporation which engages in the business of furnishing guards.

Blue Ribbon contacted Guardsmark about obtaining guards for the Mason City plant. Guardsmark wrote to the Department of Public Safety for information about engaging in such activities in Iowa and for proper forms. The Department sent Guardsmark a copy of the Iowa statute on detective licenses, an application blank, and fingerprint forms.

Subsequently, the president of Guardsmark called the Department requesting a temporary or reciprocal permit to furnish guards in Iowa, and a Department official responded that a license would be necessary and that some time would be needed to process the application after it was filed. Still later, Guardsmark's representatives came to the Department with the fee and completed application blank and fingerprint forms. The Department official explained the procedure for processing applications and the time required, and stated that the examination would have to be taken and Guardsmark would be notified of the time the examination would be given. The official also stated that Guardsmark could, without a license and as an employment agency, provide personnel for Blue Ribbon to employ itself as its own guards.

Shortly thereafter, Guardsmark furnished Blue Ribbon with uniformed guards, who were employees of Guardsmark and not of Blue Ribbon. Guardsmark never took the examination for a license nor obtained one.

The county attorney charged Guardsmark with engaging in business as a detective agency without a license. Guardsmark was tried by jury, convicted, and sentenced, and has appealed to this court.

Guardsmark urges four main contentions before us. It principally contends that an organization does not violate the licensing statute unless the organization engages in investigative work. Guardsmark also contends, second, that the statute is an unconstitutional attempt to exercise the police power, third, that the Department arbitrarily refused to issue a license, and fourth, that the Department in fact did issue a license.

I. *Investigative Work Essential?* Regarding Guardsmark's first contention, a detective is usually thought of as one engaged in detection—discovering lawbreakers or securing information. But the legislature is its own lexicographer, and so the question is, how has the legislature used the words "detective business"? The answer is found in the definitions section of the licensing statute, more particularly in subsection 1 of § 80A.1, Code, 1971:

The following words and phrases when used in this chapter shall for the purposes of this chapter have the meanings respectively ascribed to them, the singular to include the plural and the masculine gender to include the feminine gender:

1. "Private detective business or profession" shall mean and include *the business of making* for hire, reward or gratis *an investigation* or investigations for the purpose of obtaining information with reference to any of the following matters: Crimes against the commonwealth or wrongs done or threatened; the habits, conduct, movement, whereabouts, associations, transactions, reputation or character of any person, firm or corporation; the credibility of witnesses or other persons; the location or recovery of lost or stolen property; the causes, origin of or responsibility for fires or accidents or injuries or damages to persons or to real or personal property; or concerning the truth or falsity of any statement or representation; or *the business of securing* for hire, reward, or gratis *evidence* to be used before investigation committees, boards of award or arbitration, or in the trial of civil or criminal cases, or *the business of furnishing* for hire, reward, or gratis *guards* or other persons to protect persons or property; or to prevent the theft or the unlawful taking or use of real or personal property, or the *business of performing the services of* such *guard* or

other person for any of said purposes. (Italics added.)

The legislature has thus included the furnishing of guards to protect persons or property within its definition of detective business.

Guardsmark contends, however, that the meaning of entire subsection 1 is controlled by the colon near the beginning, " 'Private detective business or profession' shall mean and include the business of making for hire, reward or gratis an investigation or investigations for the purpose of obtaining *information with reference to any of the* following matters: * * *" Guardsmark argues that such investigation or investigations relate to all subjects following the colon including "the business of securing for hire, reward, or gratis evidence," "the business of furnishing for hire, reward, or gratis guards," and "the business of performing the services of such guard. * *" Guardsmark's position is that if investigative work is not performed to obtain information regarding those subjects, then the statute is not violated. The evidence is clear that Guardsmark did not perform investigative work.

The trial court rejected Guardsmark's reading of the subsection and so do we for two reasons. First, investigations for the purpose of obtaining information are sensible with reference to crimes against the commonwealth, the habits of people, the credibility of witnesses, and matters of that sort—the first matters which follow the colon. But the business of making investigations with reference to the business of furnishing guards seems improbable—or investigations regarding the other activities specified in the latter part of the subsection. Second, the express language of the subsection indicates that separate activities were intended. The subsection consists of one sentence. The subject of the sentence is "Private detective business or profession". The verb is "shall mean and include". Following the verb is not one business, but four separate businesses, each

separated by the disjunction "or": "the business of making" investigations, "or the business of securing" evidence, "or the business of furnishing" guards, "or the business of performing" services as guards. Guardsmark was engaged in one of those separate businesses without a license—the business of furnishing guards.

■ The meaning of the section as it stands is plain. The duty of the courts regarding a statute is to give it " * * * a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it." State v. Robinson, 165 N.W.2d 802, 805 (Iowa); Chicago & N. W. Ry. v. City of Osage, 176 N.W.2d 788, 792 (Iowa). Punctuation cannot stand in the way of manifest legislative intent. In re Petersen's Will, 186 Iowa 75, 84, 172 N.W. 206, 209 ("We cannot stumble over a semicolon or a comma to defeat what is the evident purpose and intent of the Legislature, made to appear in every statute. Punctuation, including quotation marks, brackets, etc., is subordinate to the context, and can never control the plain meaning of the statute.").

■ We hold that a license is required under chapter 80A when an organization furnishes others with guards of its own to protect persons or property.

II. *Unconstitutional Exercise of Police Power?* The essence of Guardsmark's contention as to unconstitutionality is that the statute is a needless interference with the lawful occupation of guarding persons and property, and hence beyond the pale of the police power.

■ Guardsmark must, of course, shoulder a heavy burden when it attacks an act of the legislature on the ground of unconstitutionality. Legislative acts are presumed to be constitutional, and we will not overturn them unless they are clearly, palpably, and without doubt unconstitutional. State v. Abodeely, 179 N.W.2d 347 (Iowa); State v. McNeal, 167 N.W.2d 674 (Iowa).

Several courts have held, generally, that the police power extends to the licensing and regulation of private detectives. Sterling Secret Service, Inc. v. Michigan Dep't of State Police, 20 Mich.App. 502, 174 N.W. 2d 298; Schulman v. Kelly, 54 N.J. 364, 255 A.2d 250; Manufacturers' & Merchants' Inspection Bureau v. Buech, 173 Wis. 433, 181 N.W. 125.

Guardsmark urges upon us, however, the contention that its business is guarding, not investigating, and that no necessity exists to regulate or license guarding.

■ We are not persuaded by the argument, and we are not at all sufficiently persuaded that we would be justified in invalidating an act of the legislature. Guards are frequently armed. They often serve after nightfall when the incidence of crime rises. The nature of their work exposes them to the possibility of violence. In the present situation Guardsmark guarded a plant which was under strike, a situation which is often fraught with high emotions and short tempers. We think the legislature was well within its province in laying down requirements for organizations providing guard services and in policing those requirements by the licensing device. We are not convinced that the legislative requirements, while quite strict, are unjustified.

■ Nor does the statute discriminate against a certain class or grant unbridled discretion to the Department in granting or refusing licenses. Compare Central States Theatre Corp. v. Sar, 245 Iowa 1254, 66 N.W.2d 450, with Pierce v. Incorporated Town of La Porte City, 259 Iowa 1120, 146 N.W.2d 907. In § 80A.5 the legislature has spelled out the requirements for a license. Those who meet the requirements are entitled to a license; those who do not are not.

III. *Arbitrary Refusal to License?*
Guardsmark's third contention appears to

be founded on the postulate that if the Department arbitrarily refused a license, Guardsmark could provide guard service without a license notwithstanding the statute. Assuming without deciding that the postulate is true, the evidence fails to disclose arbitrary action on the part of the Department.

Chapter 80 lays down rather stringent requirements for a license. The Department is required to investigate applicants, and this takes some time. An examination is required by the statute, and the Department conducts examinations of qualified applicants three times a year.

■ The evidence is barren of any indication that the Department departed from its usual procedures, or treated Guardsmark differently from anyone else, or tried to exclude Guardsmark, or endeavored to eliminate Guardsmark from competing in this occupation. True, on a couple of occasions in the past the Department allowed individuals who missed the examination because of some circumstance such as a death in the family to take it later. But the Department did not set up advance examinations for certain applicants. True too, Guardsmark might not have been able to obtain this one guarding job at Blue Ribbon because of the time required for licensing procedures. But it could have gone through with its application, had one of its officials take the examination, and been in a position thereafter to operate in this jurisdiction. The impressive credentials it presented with its application give no reason to indicate it would have failed to receive a license had it persevered.

We cannot uphold Guardsmark's contention of arbitrary departmental action.

■ IV. *De Facto License?*
Guardsmark's final contention is that the jury should have been permitted to find whether the Department in fact issued a license. The evidence is barren of proof of this contention. Cf. Incor-

porated Town of Scranton v. Hensen, 163 Iowa 457, 144 N.W. 1024. Issues which do not have substantial evidentiary support are not for the jury. State v. McConnell, 178 N.W.2d 386 (Iowa).

Affirmed.

All Justices concur.