D. E. GRANT et al., Appellees,

v.

Collin W. FRITZ, Superintendent of Banking
of the State of Iowa, Appellant.

No. 55199.

Supreme Court of Iowa.

Sept. 19, 1972.

Richard C. Turner, Atty. Gen., and Elizabeth A. Nolan, Asst. Atty. Gen., for appellant.

R. K. Richardson of Richardson, Richardson & Handley, Jefferson, and H. S. Selby of Selby & Updegraff, Newton, for appellees.

REES, Justice.

This is an appeal from a judgment and decree entered in a certiorari action holding section 524.305(3), The Code, 1971, unconstitutional, and invalidating defendant-superintendent of banking's order denying the issuance of a new state bank charter at Arnolds Park in Dickinson County, Iowa. Defendant-superintendent further appeals from the denial of his motion for a new trial and to correct, amend or enlarge the trial court's findings.

This is the first time the new Iowa banking act of 1969 has come under judicial scrutiny, so far as we are informed.

The act, identified as senate file #118, was approved April 7, 1969, became effective January 1, 1970, and is a comprehensive law relating to the establishment, operation and regulation of state banks in Iowa. It now appears as chapter 524 in the Code, 1971.

Prior to the enactment of chapter 524 of the 1971 Code, no judicial review of the refusal by the superintendent of banking was available to applicants who applied for permission to incorporate a state or savings bank. Under the provisions of sections 524.11 and 524.12 of chapter 524, repealed by the enactment of the present chapter 524, any person aggrieved by the action of the superintendent of banking in either granting or refusing to grant a certificate of authority to engage in banking could appeal to the executive council of the state, and the action of the executive council after hearing was final. Judicial review of the action of the superintendent of banking in either granting or refusing to grant permission to incorporate a state or savings bank is now available under the provisions of section 524.305, The Code, 1971, as will be hereinafter elaborated upon.

Section 524.305, The Code, 1971 (the section of the statute with which we are principally concerned here) provides in pertinent part:

"Approval by superintendent. Upon receipt of an application for approval of a state bank the superintendent shall conduct such investigation as he deems necessary to ascertain whether:

"1. The articles of incorporation and supporting items satisfy the requirements of this chapter.

"2. The convenience and needs of the public will be served by the proposed state bank.

"3. The population density or other economic characteristics of the area primarily to be served by the proposed state

bank afford reasonable promise of adequate support for the state bank.

"4. The character and fitness of the incorporators and of the members of the initial board of directors are such as to command the confidence of the community and to warrant the belief that the business of the proposed state bank will be honestly and efficiently conducted.

"5. The capital structure of the proposed state bank is adequate in relation to the amount of the anticipated business of the state bank and the safety of prospective depositors.

"6. The proposed state bank will have sufficient personnel with adequate knowledge and experience to conduct the business of the state bank, and to administer fiduciary accounts, if the state bank is to be authorized to act in a fiduciary capacity.

"Within one hundred eighty days after receipt of the application for approval together with the items referred to in subsections 1 and 2 of section 524.303, the superintendent shall make a determination whether to approve or disapprove the pending application on the basis of his investigation. Within ninety days after the second publication of the notice referred to in section 524.304 any person opposing the pending application shall file written objections thereto with the superintendent. Following the expiration of the period referred to in the previous sentence and prior to making a determination on the pending application the superintendent shall, upon adequate notice, afford all interested persons, including the incorporators, an opportunity for a stenographically reported hearing during which such persons shall be allowed to present evidence in support of, or in opposition to, the pending application. If the superintendent approves the pending application, he shall deliver the articles of incorporation, with his approval indicated thereon, to the secretary of state and notify the incorporators, and such other persons who requested in writing that they be notified, of such approval. If the superintendent disapproves the pending application he shall notify the incorporators of his action and the reason for his decision.

"The decision of the superintendent shall be subject to review by the district court of Polk county upon petition by any interested person within thirty days after the superintendent notifies the incorporators of his decision. The decision of the superintendent shall be upheld unless unsupported by substantial evidence. In making this determination the court shall review the whole record or such portions thereof as may be placed in issue by any person. * * *"

The plaintiffs, on or about September 8, 1970 filed with the defendant-superintendent their application to organize a state bank to be known as Okoboji Marine State Bank, and to be located at Arnolds Park, Iowa. They filed with their application proposed articles of incorporation and other supporting papers and information as is required by statute (section 524.303, The Code, 1971).

On March 12, 1971, following investigation and hearing, defendant-superintendent issued his "Order Denying New State Bank", specifically denying the application of the plaintiffs to organize the bank. Based upon the application and the investigation caused to be made by the superintendent and the testimony and written evidence presented at the hearing, the superintendent in his order found:

(1) The articles and supporting items satisfy the requirements of section 524.-305(1), The Code.

(2) The convenience and needs of the public would be served by the proposed state bank; however, in view of the number and proximity of existing bank facilities in relation to the proposed location of the new state bank, the superintendent did not find substantial reason to doubt that the convenience and needs of

the public were not already being adequately served.

(3) The population density and other economic characteristics of the area primarily to be served by the proposed state bank did not afford reasonable promise of adequate support of the bank.

The superintendent further found that the character and fitness of the incorporators were such as to command the confidence of the community and to warrant the belief the business of the proposed bank would be honestly and efficiently conducted; that the capital structure of the proposed bank was more than adequate in relation to the amount of anticipated business of the bank and the safety of prospective depositors, and that the bank would have sufficient personnel with adequate knowledge and experience in the banking business to manage the bank. It is apparent, therefore, that the superintendent based his denial upon: (a) that while the needs and convenience of the public would be served by the proposed bank, the superintendent did not find substantial reason to doubt the public needs and convenience were not now already being adequately served, and (b) that the population density and other economic characteristics of the area primarily to be served by the bank did not afford reasonable promise of adequate support of the bank.

Trial court, after petition for review had been filed in the district court of Polk County, sustained the writ of certiorari and set aside the order of the superintendent denying the new state bank. Trial court held sub-section 3 of section 524.305 of the Code, 1971 was unconstitutional and is separable from the remainder of section 524.305, and ordered the superintendent of banking to take further action "for the approval" of the application of plaintiffs for a new state bank. Trial court further found the superintendent's action illegal as being arbitrary, capricious and without foundation in fact or law, and in excess of proper jurisdiction and authority.

Defendant-superintendent of banking relies for reversal on the following claimed errors:

(1) The trial court erred in declaring section 524.305(3), the Code, 1971, to be null and void as an unconstitutional delegation of legislative authority.

(2) Trial court erred in finding the order of the superintendent of banking "arbitrary, capricious, without proper foundation in fact and in law, and in excess of his proper authority and jurisdiction."

(3) Trial court exceeded its jurisdiction in a certiorari proceeding and erred in ordering defendant-superintendent to take further action for the approval of the subject application for a new state bank charter.

I. We are unable to agree with the finding and conclusion of trial court that section 524.305(3), which directs the superintendent of banking to determine

"3. The population density or other economic characteristics of the area primarily to be served by the proposed bank afford reasonable promise of adequate support for the state bank"

is unconstitutional. Trial court found sub-section 3 of section 524.305 is null and void as being an unconstitutional delegation of legislative power in violation of section 1, article III of the Iowa Constitution.

In its determination that sub-section 3 of the cited statute constitutes an unlawful delegation of legislative power, the trial court relied on State ex rel. Klise v. Town of Riverdale, 244 Iowa 423, 57 N.W.2d 63, 70. In *State ex rel. Klise*, this court in passing upon the constitutionality of a municipal annexation statute since repealed, said:

"What is desirable is not a question of fact that can be judicially determined. It is a question of policy or public interest exercisable by the legislature alone.

\* \* \* No one knows what the legislature meant by its requirement of desirability. It probably meant the court was to decide what would best promote or be conducive to the public good. Plainly this is legislation. The legislature has been entrusted with the power to pass laws for the public good. It cannot delegate to the courts, as a condition to the law's taking effect, the choice of determining whether the law will have a salutary effect. \* \* \* This is no true finding of fact. It gives the municipality power to extend if the court thinks best."

Our own court has recognized the modern tendency toward greater liberality in permitting grants of discretion to administrative officials as the complexity of governmental and economic conditions increases, as stated in Pressman v. Barnes, 209 Md. 544, 121 A.2d 816; Elk Run Telephone Co. v. General Telephone Co. (Iowa 1968), 160 N.W.2d 311; State v. Guardsmark, Inc. (Iowa 1971), 190 N.W.2d 397; Iron Workers Local #67 v. Hart (Iowa 1971), 191 N.W.2d 758; Brown Enterprises, Inc. v. Fulton (Iowa 1971), 192 N.W.2d 773; State v. Van Trump, 224 Iowa 504, 275 N.W. 569; see comment, 31 Mich.L.Rev. 786, 794, and 33 Iowa L.Rev. 377, 381.

In Elk Run Telephone Co. v. General Telephone Co., *supra*, 160 N.W.2d 311, at 315, this court said:

"It is generally recognized that some legislative power may be delegated to administrative bodies. The practice of doing so has increased as the range and complexity of governmental functions continue to expand. It has been said that government could not be efficiently carried out if something were not left to the judgment and discretion of administration officers to accomplish in detail what is authorized or required by law in general terms. Butler v. Commonwealth, 189 Va. 411, 53 S.E.2d 152. The test—not always easy to apply—is whether such delegation is a reasonable one permitting the administrative body only to 'fill in

the details' to accomplish a general purpose or policy announced by the legislature itself or whether it abdicates to the administrative body the right to legislate.

"Courts have generally recognized that administrative needs are becoming more and more demanding. In Pressman v. Barnes, 209 Md. 544, 555, 121 A.2d 816, 822, we find this, 'Modern tendency is \* \* \* toward greater liberality in permitting grants of discretion to administrative officials \* \* \* as the complexity of governmental and economic conditions increases.' In Gilman v. City of Newark, 73 N.J.Super. 562, 180 A.2d 365, 384, that same view is stated this way. 'The mere fact that standards \* \* \* are general rather than specific does not militate against their acceptance and validity. The exigencies of modern government have increasingly dictated the use of general rather than detailed standards in regulatory enactments. \* \* \* See also Esso Standard Oil Company v. Holderman, 75 N.J.Super. 455, 183 A.2d 454, 464.

"Perhaps no case has been more tolerant of administrative power than Warren v. Marion County, 222 Or. 307, 353 P.2d 257, 261, where the court said, 'There is no constitutional requirement that all delegation of legislative power must be accompanied by a statement of standards circumscribing its exercise. \* \* \*'"

"While we have never gone that far, our own decisions confirm the philosophy that the standards set up need not be exact or precise if general policy is defined."

"In Noble v. English, 183 Iowa 893, 895, 167 N.W. 629, in upholding the right of the Commissioner of Insurance to refuse a license 'for good cause,' which in this case was solely the nonresidence of the applicant, we said, 'It is manifest that the legislature in seeking to control the management of businesses \* \* \* cannot always anticipate and

foresee all the conditions that may arise * * * which may affect the public interest. It therefore, may, delegate to the ministerial officers certain powers, somewhat judicial in their nature, the exercise of which is essential to the proper and effectual carrying out of the purpose and object of the law itself * * *. This is the theory upon which legislative regulation is based.' In Gilchrist v. Bierring, 234 Iowa 899, 14 N.W.2d 724, we upheld the right of the Cosmetology Board to make rules and regulations as to 'sanitary conditions'. Hubbell v. Higgins, 148 Iowa 36, 126 N.W. 914, approved the delegation of somewhat similar authority to an inspector charged with the duty of determining whether hotels were of 'approved fireproof construction' or maintained in 'approved sanitary condition'. More recently in Danner v. Hass, 257 Iowa 654, 134 N.W.2d 534, we held a statute permitting the Department of Public Safety to determine if a violation was 'serious' a sufficient standard to permit the department to use its discretion and judgment. There we point out decisions from other jurisdictions holding to like effect which we need not repeat here. Similar results may be found in Trustees of Village of Saratoga Springs v. Saratoga Gas, Electric Light and Power Company, 191 N.Y. 123, 83 N.E. 693, 18 L.R.A.,N.S., 713, and International Railway Company v. Public Service Commission, 264 App.Div. 506, 36 N.Y.S.2d 125. Some recent decisions suggest that the matter of standards or guidelines is not as important as procedural safeguards. This theory is stated by Davis in his Administrative Law Treatise, section 2.10, page 113, as follows, 'Judicial opinions which pass upon the validity of delegations of the power of adjudication rather uniformly revolve around adequacy of standards, but in many cases one may surmise that the motivating force has more to do with presence or absence of procedural safeguards. Some state delegations held unconstitutional probably would be invalidated by any court, not because of indefiniteness of standards, but because of the arbitrary power conferred.'

"In Esso Standard Oil Company v. Holderman, supra, 183 A.2d at page 464 we find this, 'The modern and preferred approach is in favor of flexibility and liberality insofar as standards for delegation are concerned while exerting close judicial supervision over fairness of adjudicative procedures.' In Warren v. Marion County, supra, the same thing is said this way, ' * * * The important consideration is not whether the statute delegating the power expresses *standards* but whether the procedure established for the exercise of the power furnishes adequate *safeguards* to those who are affected by the administrative action.' "

In the light of the foregoing precedents, we hold sub-section 3 of section 524.305, Code, 1971, is constitutional. Such holding necessitates reversal of trial court.

■ II. In any event, the constitutional prohibition against delegation of legislative powers is given a liberal interpretation in favor of constitutionality of the legislation. Miller v. Schuster, 227 Iowa 1005, 289 N.W. 702; State v. Guardsmark, *supra*; Iron Workers Local #67 v. Hart, *supra*; Brown Enterprises, Inc. v. Fulton, *supra*.

In State v. Manning, 220 Iowa 525, 259 N.W. 213, this court held that while the legislature cannot delegate legislative powers, it can delegate the working out of the details of a legislative measure. We are dealing here with legislation in a sensitive area—the control of the banking industry. We have concluded the defendant-superintendent in the matter before us exercised his candid judgment in denying the application of plaintiffs on the grounds there was no reasonable promise of adequate support for the proposed bank, considering the population density and other economic characteristics of the area primarily to be served by the bank, and that while the public convenience and necessity would be

served by the bank if permitted to organize, the necessities and convenience of the public were already being served by existing banks.

The 1970 population of Arnolds Park (the city or town in which it was proposed to locate the new bank) is 970. Within a radius of 10 miles the area was being served by 4 full service banks; and 11 full service banks and one bank office were located within a radius of 20 miles from the bank's proposed location. A new bank does not create wealth; the funds deposited in it are already in existence, and are withdrawn from other banks, in all likelihood banks in the immediate area of the proposed new bank.

■ The chief purpose of state supervision (of banks) is to protect and safeguard the public in its relation to the bank as depositors. Harris Estate v. West Grove Savings Bank, 207 Iowa 41, 217 N.W. 477.

"Banking laws, passed in the exercise of the power of the state to regulate the business of banking, are to be construed in the light of the purpose of their enactment, the evils to be cured, and the remedy designed, as well as in connection with statutes in pari materia and in harmony with general principles of law. Such construction should be placed on them as will render them flexible enough to meet the requirements of the banks, and rigid enough to provide adequate protection for depositors and the public, protection and security of depositors and other creditors, being the paramount purpose of banking statutes, necessitating construction in keeping with such purpose unless a contrary purpose clearly appears. These laws, in so far as they are laws relating to a special subject, must be held to be paramount to general laws that are inconsistent with them.

"The several provisions of a banking act are to be construed together in order fairly to determine the purpose of the legislature and the interrelation of the several sections." 9 C.J.S. Banks and Banking § 6, page 34.

III. We next turn to a consideration of defendant-superintendent's contention and assertion that trial court erred in finding the order of the superintendent of banking "arbitrary, capricious, without proper foundation in fact and in law and in excess of his proper authority and jurisdiction".

■ We consider it proper, and in fact incumbent upon us to construe section 524.-305, The Code, and particularly, sub-section 3 thereof, *in pari materia* with all of the other provisions of the banking act of 1969. In this connection we refer to section 524.102 of the Act (in which the General Assembly declared its purpose in adopting the Act), the pertinent portion of which provides:

"The general assembly declares as its purpose in adopting this chapter to provide for:

"* * *

"8. The delegation to the superintendent of adequate rule-making power and administrative discretion, in order that the supervision and regulation of state banks may be flexible and readily responsive to changes in economic conditions and changes in banking and fiduciary practices. * * *"

Section 524.305 provides *inter alia* that the decision of the superintendent (with reference to the granting or refusing to grant applications for the organization of new banks) shall be subject to review by the district court of Polk County upon petition by any interested person within thirty days after the superintendent notifies the incorporators of his decision. The decision of the superintendent shall be upheld *unless unsupported by substantial evidence. In making this determination the court shall review the whole record or such portions thereof as may be placed in issue by any person.*

This court seems never to have occupied itself heretofore with an interpretation of "substantial evidence". A like provision for orders and decisions of administrative agencies to be upheld by reviewing authorities *unless unsupported by substantial evidence* is employed repeatedly in legislation providing for the review of the action of administrative boards and commissions.

■ That portion of section 524.305 which provides for judicial review and which is quoted above was intended by the legislature, in our judgment, to limit the scope of review by the district court of Polk County to which appeal was taken. The "substantial evidence rule" which has been analysed by legal writers, is the outstanding statutory and judicial base which courts use as a springboard for checking and correcting errors of fact.

■ The "substantial evidence rule" is utilized in judicial checking of findings of fact and is not a broad review. Under the "substantial evidence rule" a reviewing court is limited in determining whether there was a substantial basis for the order (as in this case) of the superintendent of banking, and unless the order is not supported by substantial evidence, or is otherwise contrary to law, it may not be disturbed. It may not be too broad a statement to make now that this rule is used in all cases of review, even though courts speak of the "clearly erroneous rule" or other rules; put differently, it is not alone conceivable, but it is suggested by legal writers, that courts first view the "substantial evidence rule" to determine the facts and then formulate their opinions, announcing their decision in the language of a narrower rule, *i. e.*, the "clearly erroneous rule" or the arbitrary and capricious doctrine. See Forkosch, Treatise on Administrative Law, § 338, pages 731–733; Davis, Administrative Law Treatise, 1970 Supp., Ch. 29, § 29.01, pages 996–997.

Even if we were able to find a parallel between the statute assailed in State ex rel. Klise and sub-section 3 of § 524.305 under consideration here (which we are unable to do), we are inclined to give consideration to many state decisions which have been quite liberal in upholding needed delegations of adjudicative power, especially when procedural safeguards are adequate and when judicial review is available. See Davis, Administrative Law Treatise, Vol. I, § 2.10, page 115. The proliferation of boards, commissions and other administrative agencies over the past years has led all courts to reexamine the question of the validity of delegations of power by legislatures to administrative agencies. Statutes have been upheld as constitutional which authorized: (a) commissioner of motor vehicles to suspend a driver's license "upon any reasonable ground appearing in the records of the Division, * * * when he deems it necessary for the safety of the public on the highways." (Butler v. Commonwealth, 189 Va. 411, 53 S.E.2d 152); (b) a statute delegating power to fix charges at state mental hospitals which authorized a department to investigate financial ability and "to set a standard as a basis of judgment of ability to pay, which standard shall be recomputed periodically to reflect changes in the cost of living and other pertinent factors." (Kough v. Hoehler, 413 Ill. 409, 421, 109 N.E.2d 177, 179); and (c) a statute authorizing the industrial commissioner to grant licenses to operate employment agencies, and to deny any application if the character of the applicant makes him unfit, if the premises are unfit, or if the number of such agencies "is sufficient to supply the needs of employers and employees". (Graebner v. Industrial Comm., 269 Wis. 252, 257, 68 N.W.2d 714, 717).

The Supreme Court of South Dakota, in City of Sioux Falls v. Kadinger, 75 S.D. 86, 91, 59 N.W.2d 631, 633, in upholding a grant of power to a board of plumbing examiners to examine applicants for licenses "to determine the qualifications and fitness of such applicants for the license applied for", rejected the contention that "there are no standards fixed for the examinations required, and that as a result the ex-

amining board may favor one applicant over another", the court saying merely:

"The act creates a board of capable examiners, and requires that the examination test the fitness and qualifications of the applicant for the license applied for. These provisions together with the definition of plumbing and the classification of plumbers are sufficient as an expression of legislative will and the execution of this will consists of administrative functions only. There is no delegation of legislative power. * * * There is no showing of any kind that the Examining Board is acting or has acted so as to favor one applicant over another, and this court will not presume that the Board's acts will be unreasonable, unfair or arbitrary."

The Supreme Court of West Virginia, in West Central Producers Cooperative Ass'n. v. Commissioner of Agriculture, 124 W.Va. 81, 20 S.E.2d 797, upheld a delegation to a commissioner of agriculture to grant applications to operate public markets if, after hearing, he finds "that the public interest require the same, and that there is sufficient need for such market in the locality." The West Virginia court reasoned that stating a more definite standard would be difficult, saying, "Any standard as to distances between markets or surrounding population would be more or less arbitrary, and of little, if any, value."

In Butler v. Commonwealth, *supra*, at 155 of 53 S.E.2d, the Virginia court said, "Government could not be efficiently carried on if something could not be left to the judgment and discretion of administrative officers to accomplish in detail what is authorized or required by law in general terms. Without this power legislation would become either oppressive or inefficient."

In Graebner v. Industrial Comm., *supra*, at 717 of 68 N.W.2d, the Wisconsin court said, * * * standards * * * must be construed in view of the object which prompted the licensing act. So construed, the ordinance or statute is not to be interpreted as granting power to act arbitrarily or capriciously."

A standard of "necessary and proper for the public convenience and properly conserves the public interest" as a guide for approving the number of buses to be operated on city streets was upheld by the New Jersey court in Application of Greenville Bus Co., 17 N.J. 131, 135, 110 A.2d 122, 124; and, in State v. Hotel Bar Foods, Inc., 18 N.J. 115, 124, 112 A.2d 726, 732, the court said, "The exigencies of modern government have increasingly dictated the use of general, rather than minutely detailed standards and they have, for the most part, received the approval of our courts."

In 1956 the Supreme Court of Maryland, in Pressman v. Barnes, *supra*, at 121 A.2d 816, 821–822, said, "The modern tendency of the courts is toward greater liberality in permitting grants of discretion to administrative officials in order to facilitate the administration of the laws as the complexity of governmental and economic conditions increases." Also: "Where the discretion to be exercised relates to police regulations for the protection of public morals, health, safety, or general welfare, and it is impracticable to fix standards without destroying the flexibility necessary to enable the administrative officials to carry out the legislative will, legislation delegating such discretion without restrictions may be valid." This remark is in agreement with a recent holding of the Supreme Court of the United States, in Fahey v. Mallonee, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030.

As early as 1937 the Supreme Court of Ohio, in upholding a delegation to a public service commission of authority to prescribe regulations for service and safety of motor carriers, said, "There are many instances where it is impossible or impracticable to lay down criteria or standards without destroying the flexibility necessary

to enable the administrative officers to carry out the legislative will. * * * In such cases it has been held unnecessary to declare the policy of the law by establishing definite restrictions. * * * Standards restricting the commission and directing its actions are impracticable under the circumstances." Matz v. J. L. Curtis Cartage Co., 132 Ohio St. 271, 281–286, 7 N.E. 2d 220, 225–227.

Substantial evidence has been variously defined, and the phrase has been interpreted in many ways by federal courts and courts of sister jurisdictions. It has been defined as evidence which would justify refusal to direct a verdict. See In re Weeks' Estate, 29 N.J.Super. 533, 103 A.2d 43, 45; Foote Bros. Gear & Machine Corp. v. N. L. R. B., C.C.A. 7, 114 F.2d 611, 621; Larmay v. Hobby, E.D.Wis., 132 F.Supp. 738, 740.

Substantial evidence has also been interpreted to mean more than a scintilla of evidence, but evidence which constitutes a body of proof less than a preponderance. Carpenter v. Flemming, D.C.W.Va., 178 F.Supp. 791, 793.

It has also been construed to mean evidence which, if true, has probative force upon the issues and from which the trier of fact can reasonably decide the case on the fact issues, or evidence favoring facts on which reasonable men may differ. Collins v. Division of Welfare, 364 Mo. 1032, 270 S.W.2d 817, 820; Cupples Hesse Corp. v. State Tax Comm. (Mo.), 329 S.W.2d 696, 702; Walton v. Bank of Cal., 218 Cal.App.2d 527, 32 Cal.Rptr. 856, 864 (no national Reporter citation); State v. Gregory, 339 Mo. 133, 96 S.W.2d 47, 51–52.

In Consolo v. Fed. Maritime Comm., 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L. Ed.2d 131, the Supreme Court of the United States said, respecting "substantial evidence":

"This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."

Again, the Supreme Court of the United States, speaking in Consolo v. Fed. Maritime Comm., supra, 86 S.Ct. at 1026, said:

"Congress was very deliberate in adopting this standard of review. It frees the reviewing courts of the time-consuming and difficult task of weighing the evidence, it gives proper respect to the expertise of the administrative tribunal and it helps to promote the uniform application of the statute. These policies are particularly important when a court is asked to review an agency's fashioning of discretionary relief. In this area agency determinations frequently rest upon a complex and hard-to-review mix of considerations. By giving the agency discretionary power to fashion remedies, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency. * * *"

See also Davis, Administrative Law Treatise, 1970 Supp., § 29.01, page 997.

█   We have reviewed the record made before the superintendent of banking in respect to the hearing and supporting evidence and documents, from which the defendant-superintendent reached his conclusion not to approve the application for the proposed state bank at Arnolds Park. We conclude his findings, and the order based thereon, were supported by substantial evidence.

It necessarily follows therefore that the action of the defendant-superintendent was not arbitrary and capricious, but was the consequence of an exercise of his candid judgment on the record before him. We have said that the phrase "arbitrary and capricious" used in its legal sense means without rational basis. The phrase has also been defined as "willful and unreasonable action, without consideration and in

disregard of the facts or circumstances of the case; action taken without some basis which would lead a reasonable and honest man to such action." Markwardt v. County Board of Review (Iowa 1970), 174 N. W.2d 396, 400, and cases there cited.

We therefore conclude the finding of the trial court that the action of the superintendent of banking was arbitrary and capricious was arrived at without proper regard to the scope of review which is limited and defined by section 524.305, Code, 1971.

IV. While we deem it unnecessary in light of our reversal here, to consider the contention of defendant that trial court exceeded its jurisdiction in a certiorari proceeding and erred in ordering the defendant to take further action for approval of the subject application for a new state bank charter, the question is of some significance, is before us squarely, and should be given our attention.

In its order, judgment and decree trial court ordered and directed defendant-superintendent of banking to "take further action in accord with the judgment and decree herein set forth and in conformity with the laws of the State of Iowa for approval of the application of [plaintiffs] to organize a new state bank to be located at the city of Arnolds Park, Dickinson County, Iowa, under the title of Okoboji Marine State Bank." Defendant's contention here is that trial court exceeded its jurisdiction in a certiorari proceedings, and erred in ordering the defendant to take further action for approval of the subject application for a new state bank charter. Rule 316, Rules of Civil Procedure, provides:

"Unless otherwise specially provided by statute, the judgment on certiorari shall be limited to sustaining the proceedings below, or annulling the same wholly or in part, to the extent that they were illegal or in excess of jurisdiction, and prescribing the manner in which either party may proceed further, nor shall such judgment substitute a different or amended decree or order for that being reviewed."

It should be noted plaintiffs confined trial court's permissible action by filing their petition in certiorari, thus triggering the jurisdiction limitations of R.C.P. 316. The district court "review" provided in section 524.305 [which also authorizes a damage award] does not mandate review by certiorari: note similar language in sections 96.6(9), 97B.29, which have never been construed to require a certiorari review. If section 524.305 was meant to provide for review by certiorari only, we assume the legislature would have used that language, as it did in section 358A.19, The Code.

Both parties cite and rely on National Benefit Accident Ass'n. v. Murphy (1936), 222 Iowa 98, 269 N.W. 15. In *National Benefit*, the petitioners sued out a writ of certiorari directed to the commissioner of insurance on the ground the commissioner was acting illegally in refusing to approve an amendment to the company's articles of incorporation. Trial court sustained the writ and held the respondents were acting illegally, and, in its decree approved the amendment and authorized the company to resume the writing of life insurance. At page 19 of 269 N.W., this court said:

"We are inclined to agree with appellants as to this contention, and hold that the decree should be modified by striking therefrom the part which appears to be an approval by the court of the amendment to the articles of incorporation and a grant of authority to the appellee to write life insurance. The decree contains a provision directing the appellants to take whatever action is necessary to give full force and effect to its terms. Under the law, we think the approval of the articles of incorporation must come from the appellants (commissioner of insurance) and not from the court, and that the court has no authority except to require the appellants to perform the duties which the law thus imposes upon them."

■ As in *National Benefit* the approval of the articles of incorporation in the matter before us must come from the superintendent of banking and not from the court, and trial court here had no authority except to require the superintendent to perform the duties which the law imposed upon him and which he would be required to perform but for our conclusions to reverse the trial court.

■ The scope of review by certiorari is strictly limited. It is not a trial *de novo,* and the judgment of the trial court should be limited to sustaining the proceedings below or annulling them in whole or in part. No decree by the court should be substituted for the action of the tribunal or agency under review. See 33 Iowa L.Rev. 377, 388.

Bottomed. upon our holdings in Division' I and II above, we reverse.

Reversed.

All Justices concur, except HARRIS, J., who takes no part.